[Crim. No. 2744. First Dist., Div. One. Mar. 25, 1952.]

THE PEOPLE, Respondent, v. FRED GOLDBERG, Appellant.

Paul Friedman and Clarence Desky for Appellant.

Edmund G. Brown, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

PETERS, P. J.—Fred Goldberg was charged with two violations of section 288 of the Penal Code,[1] it being alleged that on August 9, 1950, he committed lewd and lascivious acts on Agnes, age 8, and on Patricia, age 11. On the first trial the jury disagreed. On the second trial, the instant one, the jury returned a verdict of not guilty on the count relating to Agnes, but guilty on the count relating to Patricia, with a recommendation of leniency. Defendant was granted probation for five years on condition he be confined in the county jail for four months. He appeals from the order denying his motion for a new trial, and also purports to appeal from the judgment of conviction. Inasmuch as no judgment of conviction has been entered, the appeal therefrom must be dismissed.

The appellant teaches art in two junior high schools and in an art school. At the time of trial, he had been married to his present wife for 13½ years, had lived in San Francisco about three years, and in his then location about six months. The Goldbergs have a daughter, Marian, then age 8. Marian has two playmates, Agnes, also called "Bonnie," then 8 years of age, and Patricia, then 11½ years of age. The three children all live in the same neighborhood.

The evidence in support of the count relating to Agnes is slight, hazy and unconvincing. Inasmuch as the jury acquitted appellant of this charge, it is not necessary to refer to the evidence thereon.

Patricia's testimony was reasonably clear and coherent. She identified the defendant, and remembered the date the incidents occurred, namely, August 9, 1950. She testified that the three children had been playing at her home that morning; that about 12 o'clock they all went over to the Goldberg house; that appellant was there; that she remained there until sometime between 1:30 and 2 p. m.; that she was then dressed in pedal pushers with panties underneath; that during this period appellant twice, once while they were on a sofa and once while they were on a piano bench, put his hands underneath her clothes and onto her private parts. These two incidents occurred while the other two children were in

---

[1]That section provides: "Any person who shall wilfully and lewdly commit any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child under the age of fourteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony . . ."

and out of the living room-studio, a double room with an open door between, where the acts are alleged to have occurred. She also testified that while the other two girls were out of the room, and after the two acts above described had occurred, appellant tried to kiss her and asked her to kiss him; that when she objected he said "Sh"; that appellant then told her not to tell anyone what had happened. She stated that, prior to August 9th, although she had been a frequent visitor at the appellant's house, appellant had never before committed such acts.

On cross-examination Patricia testified that one of the acts occurred when the three girls and appellant were seated on a piano bench playing the piano, with Patricia seated on the bench between appellant's legs, and with the other girls one on each side. A piano bench of dark wood was introduced by appellant, he and his wife testifying that this was the only piano bench they ever owned, and the one in the house on August 9th. Patricia testified that it was not the bench then in the house. This was consistent with her testimony on the prior trial when she testified that the bench she remembered was of light wood, and larger than the one introduced by appellant. One of the attorneys for appellant, and a doctor, both family friends, testified that they had been in the Goldberg house many times before and after August 9th and had never seen any light-colored piano bench, but had seen the one introduced into evidence. The bench produced in court was too small to permit four persons to sit on it at one time. The piano was admittedly cream-colored.

Appellant denied committing any of the charged acts. His story is that on the morning of August 9th he taught school from 9 a.m. to 12 o'clock; that his wife worked; that their child, Marian, was left with a Mrs. Oppenheimer, who lived some distance from appellant's home; that he went from the art school to Mrs. Oppenheimer's, where he picked up Marian sometime after 12:30; and that he then took Marian home where he arrived at 1 or 1:05 p.m. Mrs. Goldberg also testified that Marian was at Mrs. Oppenheimer's that morning. Thus, appellant's story directly contradicts that of Patricia who had testified that Marian was playing with her and Agnes that morning, and that the three children went to the Goldberg home at about noon, and found Goldberg was then there. It should be mentioned that no school records were produced to corroborate appellant's story as to the hours he taught that

day, nor were Mrs. Oppenheimer or Marian called as witnesses to corroborate appellant.

Appellant next testified that when he arrived near his home Patricia and Agnes were playing in the street; that they waved and called to Marian, and asked if they could come in and play with her; that they all went into the house and he prepared lunch; that he and Marian ate, and then the three girls went into Marian's room to play; that he washed the dishes, did some other household chores, and then went into the studio-living room to paint; that the room has a large bay window facing the street; that after painting for a short time he started to play the piano; that the three girls then came into the room, clustered around the piano and started to play on it; that he suggested that Patricia be allowed to play alone; that he and Patricia were seated on the piano stool when his daughter, Marian, started to tickle him and the other girls did likewise; that he tickled them back on their arms and sides, and they all had a little tussle. They all were laughing and having a good time. He was positive that at no time was he alone in the room with Patricia, denied that he and any of the children were at any time that day on the sofa, denied trying to kiss the prosecutrix, and denied committing the charged acts.

Goldberg and Patricia agree that sometime between 1:30 and 2 p.m. Patricia observed her father arriving home, and that Patricia then left the Goldberg house. Appellant testified that when Patricia left she was smiling and happy, and there is no evidence to the contrary.

The mother of Patricia testified that her daughter came home about 1:30 p.m. and immediately told her of the events in question; that her husband was then home and Patricia then told the story to her father; that they talked it over and Patricia started to cry; that they then had lunch and then Patricia and her father took a nap; that that night, after dinner, they decided to and did call the police; that Patricia told her story to the police. A police officer testified that this call came in about 7:30 p.m.; that he and another officer went out to talk to Patricia and her family; that after hearing the story they arrested appellant; and that the next day the other officer called on Agnes and secured the information that forms that count of that charge.

The evidence is uncontradicted that Agnes and Patricia before August 9th had been frequent visitors at the appellant's

home, and that since that date they continue to play with Marian, but do not now visit her home.

Appellant makes a series of contentions. In his opening brief he does not cite one case in support of these contentions. He has not filed a reply brief, but in a letter to this court after argument cites one authority. He does not directly attack the sufficiency of the evidence. It must be conceded that this is a close case on the evidence. This is indicated by the fact that one jury disagreed, and that the present jury recommended leniency.

In these sex cases, because of the nature of the charged acts, it is seldom that direct corroborating evidence can be produced by either side, and the case must usually rise or fall on the credibility of the prosecuting witness and of the accused. That is peculiarly a jury question. If Patricia's story is true, appellant is guilty of the offense charged and should be punished. If appellant's story is true, he is innocent. The jury saw these two witnesses. It was properly instructed that such charges are difficult to disprove, and that the testimony of young girls who testify to such acts should be examined with care. In spite of these admonitions, it has found that Patricia told the truth and that appellant did not. This finding is binding on an appellate court. The evidence is sufficient to sustain the conviction.

Appellant charges that the jury was coerced into bringing in a guilty verdict. The record shows that the case was given the jury at 11:17 a.m. At 4:55 p.m. it returned to the courtroom and the following occurred:

"THE COURT: Who is the foreman? I understand you have not reached an agreement. THE FOREMAN: We are unable to reach an agreement on either of the two charges. THE COURT: Without indicating which way you stand, could you give me the division by number only? THE FOREMAN: Yes, 8 to 4 on one—4 to 8 on the other. I take that back. On the second, with Agnes—— THE COURT: Well, I don't want to know which way. THE FOREMAN: On the second one it was 10-2 for and on the other was 8-4 against. A JUROR: No, 11-1. THE COURT: Well, I think maybe you ought to go back and deliberate a little more. I am not interested in how you stand, and I don't want to know how you stand insofar as which way is 'for.' I just want to know the division as to numbers. I understand that in one case it is 11-1, and in another case it is 10-2, is that correct? THE FOREMAN: Yes. THE COURT: Well, I think maybe you ought to go back and deliberate a

little more and see if there is any possibility of agreement. THE FOREMAN: May I speak, your Honor? Frankly, I don't think there is any possibility at all of reaching an agreement, your Honor. I am perfectly willing—I think we are all willing to go back, but—— THE COURT: Well, let's try it for a short time longer and see."

The jury went back to deliberate at 4:59 p.m. and at 5:57 p.m. returned with the guilty verdict.

The appellant argues that when the jury was ordered to continue its deliberations it was hungry and tired, that the court did not indicate whether food and lodging would be provided, and that the jury must have agreed on a verdict simply to get home. This is sheer speculation, unsupported by the record. ■ Within reasonable limits, the trial judge is entitled to order the jury back for further deliberations as long as he believes there is a reasonable possibility of reaching a verdict. He cannot, of course, do so under circumstances that amount to coercion. The proper line between coercion and proper action of the trial judge was recently discussed, and the relevant cases cited, in *People* v. *Lammers*, 108 Cal. App.2d 279 [238 P.2d 667]. (See, also, cases collected 8 Cal.Jur. p. 394, § 423; 4 Cal.Jur. 10-Yr.Supp. p. 838, § 423.) There was no coercion here. The point is without merit.

■ Appellant next complains that a challenge for cause of one juror was improperly denied. The point is without merit for at least two reasons. In the first place, appellant has not shown that he exhausted his peremptory challenges. This is a condition precedent in such cases. The rule, supported by ample authority, is stated as follows in 8 California Jurisprudence, page 609, section 595: "The erroneous disallowance of a challenge for cause is harmless if it does not appear that an objectionable juror was forced upon the defendant. If the defendant had not exhausted his peremptory challenges he cannot complain of the error, for, if he afterwards peremptorily challenged the objectionable juror, he is not prejudiced; and if he did not do so, he cannot complain of an error the injurious effects of which he has suffered, if at all, only by reason of his acquiescence in or failure to avoid it when he had the means and opportunity to do so."

■ In the second place, the appellant has not produced the record of the challenged *voir dire* examination. Appellant did file in the lower court a request for an additional record, in which, among other things, he requested the transcription of proceedings on *voir dire*. In this respect he failed to comply

with the requirements of rule 33(b)(3) of the Rules on Appeal. That rule provides that when other than a normal record is required (and *voir dire* examination is·not part of a normal record), the appellant shall file "with his notice of appeal an application describing the material which he desires to have included and the points on which he intends to rely which make it proper to include it. . . ." Appellant's request was filed eight days after his notice of appeal, and contains no reference to any point upon which he intended to rely insofar as *voir dire* examination is concerned. Although more than a year has elapsed since the order of the trial court was made omitting the *voir dire* examination, appellant has made no application to this court under rule 12(a) for augmentation of the record, in this respect, and this in spite of the fact that respondent's brief calling specific attention to the lack of a record on this point has been on file since November 8, 1951. Under such circumstances, since the appellant did not take steps to produce a proper record on this point, the appellate court cannot and should not consider the contention. (*People* v. *Hall*, 220 Cal. 166 [30 P.2d 23].)

Appellant next contends that the prosecuting attorney was guilty of prejudicial misconduct, both in his opening and closing statements. In the opening statement the prosecuting attorney stated that he intended to prove that while the children were romping and playing in the house "it was then that the degenerate tendencies and characteristics of the defendant came out." Counsel objected, and the trial judge directed the prosecuting attorney to "Confine yourself to the facts." No request to strike the remark or to admonish the jury was made. While the remark is argumentative and probably should not have been included in an opening statement,[2] it could not have been prejudicial. The jury was properly instructed to disregard the statements of counsel and to decide the case solely upon the evidence. The verdict of the jury exonerating appellant of the charge against Agnes, and recommending leniency on the charge against Patricia, is almost a demonstration that, if the remark was error, it did not result in prejudice. Moreover, the trial judge denied a motion for a new trial. Under such circumstances, no prejudicial error was here involved.

[2]But see, *People* v. *Brown*, 22 Cal.2d 752 [141 P.2d 1], where, in a murder case in which rape may have been involved, it was held not improper "and certainly not prejudicial" for the district attorney to refer, in his opening statement, to a "sex motive." (See p. 755.)

■ Appellant also objects to the statement made by the prosecuting attorney in his opening statement that one of the charges was that appellant on August 9, 1950, "lasciviously touched the body and private parts of Patricia . . ., a little girl of the age of 11 years" and again stated that he intended to prove that appellant "lewdly and lasciviously placed his hands" on Patricia's private parts. These were not misquotations of the charge contained in the information. The information contains substantially the language quoted, and also contains some much stronger language not used by the prosecuting attorney in his opening statement. Moreover, the language is a fair summary of the language used in section 288 of the Penal Code. The statements were proper as statements of fact of what the prosecution intended to prove.

■ Objection is also made to a statement appearing in the prosecuting attorney's closing argument that he felt very deeply about this type of case because he was the father of two children and that "there is nothing so innocent as an innocent little girl, and nothing so low in my mind as the man who would sink to contaminate them." Not only was no objection made to this remark, or request made to admonish the jury,[3] but there would not appear to be anything inherently or legally wrong with it.

■ The next objection seems to be that in some respects Patricia's testimony given on the present trial is inconsistent with her testimony given on the prior trial and on the preliminary examination. Not only are those prior records not before us, but if there were any inconsistencies, that was for the jury to decide. (*People* v. *O'Moore*, 83 Cal.App.2d 586 [189 P.2d 554].)

■ Appellant also contends that he was unduly prevented from inquiring into possible motives of Patricia. He refers to a question directed to Patricia asking her if her mother had ever told her that she had had a similar experience. An objection was sustained, and appellant's counsel made no attempt to pursue the subject. Whatever purpose counsel may have had in asking the question, such purpose was not disclosed to the court. Without some explanation of its relevancy, the question was objectionable.

Appellant also complains that he was unduly restricted in

[3]This alone would warrant an appellate court in refusing to consider the point—*People* v. *Albright*, 87 Cal.App.2d 222 [196 P.2d 800]; *People* v. *Brancato*, 83 Cal.App.2d 734 [189 P.2d 504].

his cross-examination of Patricia in that he was prevented from showing that her present testimony was inconsistent with her testimony on the prior trial. In this connection appellant refers to the fact that on the present trial Patricia testified that when she objected to being kissed, appellant said "Sh," and then said "not to tell anybody." Permission was granted to appellant on the oral argument to augment that record to show Patricia's testimony on the prior trial. The appellant has since supplied us with page 24 of the transcript of the prior trial. From the excerpt it appears that Patricia then testified that after appellant had said " 'Kiss me,' over and over again," she said "No" and he said "Sh," and "Be quiet." She did not then testify that he told her not to say anything about what had happened.

At the present trial appellant's counsel, after Patricia had repeated her testimony about what appellant had said to her, tried to read page 24 of the prior trial record to the witness for purposes of impeachment. The prosecuting attorney stated "I haven't any particular objection to your reading it. I don't think it serves any particular purpose. There is no contradiction." After some discussion, the court stated "I don't see any basis" and finally refused the requested permission. Counsel for appellant then stated: ".... I offer to insert in the record the statements of the previous transcript, page 24, lines 16 to 18, as contradictory of what the girl has just said." The testimony referred to is to the effect that when Patricia saw her father's car out of the window she went home, and that appellant did not then say anything to her.

The specific proffered testimony on page 24, lines 16 to 18, was not contradictory to her present testimony. Her testimony on the present trial that appellant told her not to tell anybody obviously related to an event before she saw her father's car out of the window. Nevertheless, we think that the proffered testimony should have been admitted. ■■ Although the counsel for appellant called direct attention to testimony on the prior trial that was not impeaching nor contradictory to that given on the present trial, it should have been apparent that what he was trying to show was that Patricia had testified on the present trial to a statement by appellant that she had not mentioned on the prior trial. That was a proper subject of cross-examination. ■■ Cross-examination is not a matter of privilege, but of right. (*People* v. *Hume,* 56 Cal.App.2d 262 [132 P.2d 52]; *People* v.

*Flores,* 15 Cal.App.2d 385 [59 P.2d 517] ; *People* v. *Ferdinand,* 194 Cal. 555 [229 P. 341].) The right, particularly in sex cases, is of fundamental importance and should not be unduly curtailed. (*People* v. *Baldwin,* 117 Cal. 244 [49 P. 186].)
■ But the improper exclusion of this testimony could not have been prejudicial. The added words were merely cumulative of the words testified to on both trials. Under article VI, section 4½ of the Constitution, such an error does not require a reversal.

The other contentions made are so obviously without merit that they do not require discussion.

The appeal from the judgment is dismissed; the order denying the motion for a new trial is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied April 9, 1952, and appellant's petition for a hearing by the Supreme Court was denied April 24, 1952. Schauer, J., was of the opinion that the petition should be granted.