[Crim. No. 2412.   Third Dist.   May 21, 1953.]

THE PEOPLE, Respondent, v. C. K. PATTERSON, Appellant.

Robert R. Harlan for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

SCHOTTKY, J.—Defendant was charged by grand jury indictment with having violated sections 4501 and 4502 of the Penal Code. Section 4501 provides that a prisoner serving less than a life sentence in a state prison who commits an assault upon another with a deadly weapon is guilty of a felony. Section 4502 provides that every prisoner who, while under the custody of prison officials, has in his possession a knife, pistol or other deadly weapon is guilty of a felony.

Defendant pleaded not guilty to both counts, and following a trial was found guilty on both counts by a jury. Defendant has appealed from the judgment pronounced in accordance with the said verdicts.

Defendant urges a number of grounds for reversal of the judgment. Before discussing them we shall give a brief summary of the evidence as it appears in the record.

The defendant was an inmate at Folsom Prison. On July 22, 1952, at approximately 9:30 a. m., one Henry Balbuena, also an inmate at Folsom, was being escorted by officers Brown and Hargrove from the reception room at Warden Heinze's office to the segregation room. One officer was on either side of Balbuena, each walking slightly to the rear of him. As they were walking down a corridor approaching building four there was an impact and Balbuena flinched. Brown turned around and saw a knife, but did not then see who had it. Then both Brown and Hargrove saw the defendant about 8 to 10 feet behind them with a knife in his hand. The two officers testified that defendant then stated: "I have been waiting a long time to do that." At Brown's request the defendant gave up the knife, and Brown then escorted him to the captain's office. During the time of the incident neither of the officers saw anyone in the corridor other than Balbuena and the defendant. The officers did not see who did the actual stabbing. Balbuena was treated at the prison hospital for a wound of his back. While his condition was critical for a time, he eventually recovered.

It was testified that when defendant was taken to the captain's office and asked if he had stabbed Balbuena he

stated: "Yes, I did." He also said he had done it with the knife which he surrendered to Brown. Under further questioning defendant showed the officers in which location of the back he had stabbed Balbuena. Later the same day, on two occasions, defendant was overheard by Officer Thornton admitting to another inmate, one Perez, that he had stabbed Balbuena. A statement was taken from defendant in the warden's office on the day of the stabbing, at which time defendant denied the stabbing and refused to state whether or not he was in the corridor at the time of the stabbing.

At the trial defendant took the stand and denied the stabbing, stating that he had come upon the place near where the stabbing took place and observed another inmate running from the scene; that he saw this inmate drop something; that upon inspection he found it was a knife, which he picked up and then surrendered to Brown. At the trial defendant admitted making the various statements attributed to him, except the one claimed to have been made by him at the time of the stabbing, that "I have been waiting a long time to do that." The reason defendant gave at the trial for making these statements was that he did so to help the man who had done it, to keep him from "being down here where I am sitting right now."

A fellow inmate, Juan Armijo, testified at the trial that he was approaching the scene of the stabbing about the time it took place and saw the defendant pick up the knife and then surrender it to Brown. Armijo denied that defendant stated he had "been waiting a long time to do that."

Appellant's first major contention is that the instructions given by the court concerning the voluntary or involuntary character of a confession was reversible error.

We have hereinbefore detailed the statements made by appellant shortly after the offense was committed. Appellant argues that at no time has he claimed that these statements or any statement was extracted from him by force, fear, duress or promises of immunity or reward, and that he was prejudiced by the giving of the instructions to the jury that before they could take the alleged confession into consideration they must find whether it was voluntary or involuntary, and that "a confession is involuntary when it is obtained by any sort of violence or threats, or by any direct or implied promises of immunity or benefit." Appellant asserts that the giving of these instructions for all

practical purposes characterized appellant's statements as admissions of guilt.

Appellant cites *People* v. *Southack*, 39 Cal.2d 578 [248 P.2d 12]. In this case the court held that instructions as to confessions had no application to the evidence since the only statement of the defendant was his declaration, ''Oh my God, I did it,'' and there was no evidence of any other statement which could be construed as a confession. However, the court went on to say that the defendant had not shown that ''the giving of the abstractly correct instruction could have prejudiced him.''

We find no merit in appellant's contention that he was prejudiced by the giving of these instructions, because while, upon the record here, appellant was not entitled to have such instructions given, the giving of them was distinctly favorable to appellant as it gave the jury the right to consider whether the statements made by appellant in the presence of police officers and in response to their questions were voluntary or involuntary.

Appellant next contends that the district attorney was guilty of improper conduct during his argument by stating as to appellant, ''Why, he is worse than a rattlesnake.'' Appellant concedes that by failing to object at the time, his counsel may have waived the prejudicial effect of the challenged statements. However, in fairness to respondent it should be pointed out that the statement of the district attorney was as follows: ''Why, he is worse than a rattlesnake. A rattlesnake at least gives a little rattle before it strikes, I believe, but he comes up behind a man silently and sticks a knife in his back.''

While such a contention may not be raised for the first time upon appeal (*People* v. *Carr*, 113 Cal.App.2d 783 [248 P.2d 977]; *People* v. *Tolson*, 109 Cal.App.2d 579 [241 P.2d 32]; *People* v. *Sampsell*, 34 Cal.2d 757 [214 P.2d 813]; *People* v. *Codina*, 30 Cal.2d 356 [181 P.2d 881]), we deem it proper to state that the questioned remarks of the district attorney were well within the bounds of legitimate argument as it is a well known fact that a rattlesnake almost invariably gives a warning rattle before striking, and the evidence in the instant case was sufficient to justify the conclusion that appellant stabbed without warning.

The final contention urged by appellant is that the evidence was insufficient to support the verdict. Appellant argues that the evidence relied upon by the People was

entirely circumstantial and that there was no testimony by anyone who actually saw the stabbing. There is no merit in this contention as is evident from the summary of the evidence hereinbefore set forth. It appears from the testimony that on July 22, 1952, Henry Balbuena, an inmate of Folsom State Prison, California, was stabbed in the back while he was being escorted by two prison guards from the warden's office in the prison to the segregation area. Neither of the officers, who were on either side of Balbuena and about two steps behind him, saw who had done the stabbing, but as Balbuena flinched from an impact Officer Brown glimpsed a knife about one foot from Balbuena. On turning around both officers saw the defendant and appellant about 8 to 10 feet in back of them with a knife in his hand. Defendant and appellant then stated: ''I have been waiting a long time to do that.'' Neither of the officers saw any other persons in the corridor where the stabbing took place at that particular time.

In *People* v. *Huizenga,* 34 Cal.2d 669 [213 P.2d 710], the contention was made by the defendant that the evidence was insufficient to justify the conviction on the ground that it failed to meet the requirement set out by the instruction to the jury on circumstantial evidence that the prosecution, when resting its case upon circumstantial evidence, must not only show a set of circumstances consistent with guilt, but must show a set of circumstances inconsistent with any reasonable theory of innocence. In answer to this contention the Supreme Court, at pages 675, 676, stated:

''This contention confuses the function of court and jury by implying that if the court itself can formulate a reasonable theory of innocence from the evidence it must reverse a judgment of conviction. It is not for the court, however, to determine whether it can formulate such a theory. It must assume in favor of the verdict the existence of every fact that the jury could reasonably deduce from the evidence and then determine whether or not a reasonable jury could find the defendant guilty beyond a reasonable doubt. 'If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury.' (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) Thus, 'the rule that the circumstances relied

upon by the prosecution must be consistent with guilt and inconsistent with an hypothesis of innocence is a rule of instruction for the jury, and is not the rule for the guidance of the court on review.' (*People* v. *Newland, supra,* at page 682.)''

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.