[Crim. No. 5025.   Second Dist., Div. Two.   Aug. 7, 1953.]

THE PEOPLE, Respondent, v. FRANK L. LAMENDOLA, Appellant.

Max Solomon for Appellant.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, S. Ernest Roll, District Attorney (Los Angeles), Jere J. Sullivan and Robert Wheeler, Deputy District Attorneys, for Respondent.

FOX, J.—Defendant was convicted on two counts of selling marijuana in violation of section 11500 of the Health and Safety Code. He appeals from the ensuing judgment and the order denying his motion for a new trial.

The sufficiency of the evidence to sustain the judgment is not challenged. It is, however, claimed that the court committed prejudicial error in admitting certain evidence for purposes of impeachment, and that the district attorney was guilty of misconduct in his argument.

Defendant operated a café and bar in North Hollywood. Officers testified to making the purchases of marijuana. Defendant denied their testimony. In detailing the circumstances leading up to the purchases the officers related that they were directed to defendant's place of business by Leo Aviles, a young man 19 years of age; that he had introduced Officer Neale to defendant as "a dealer" who "wanted to get some stuff (marijuana)"; that he was present when the deals were made, and accompanied Neale to pick up the first purchase. Leo was called as a witness by defendant. He denied having had any conversation with the officers about narcotics; denied the purchases, which Officer Neale testified were arranged in Leo's presence, and denied that he accompanied the

officer to pick up the first purchase. On cross-examination he stated that he was living with his father on May 13, 1952, and that his father had some discussion about his hanging around defendant's place. He denied that he knew his father called the police concerning defendant's operations, and also denied that his father arranged for him to meet the police officers. He testified that he knew Officer Carsten, who was a very good friend of his father; that the officer had been at his father's home shortly before May 13th, and that he had talked to them on that occasion, but he did not recall "any special thing" they discussed. The prosecutor then asked Leo, in substance, if, in that conversation, he told Officer Carsten that he had been recently in defendant's café and that while there he observed two boys apparently buying food; that they walked past him and unrolled the package and stated to him that they had purchased six sticks (referring to marijuana); that another boy he was with made the statement that $1,800 worth of narcotics had just been brought in from Mexico for this defendant; and that he believed defendant's café was the distributing center for other dealers. He denied making such a statement. Leo also denied that his father told him to give Officer Carsten any information about the place; denied he told Officer Carsten that he would help clean up the place and get rid of that narcotic business; denied that he met or saw Officer Carsten on the night of May 13th. In rebuttal Officer Carsten testified that Leo did make the statements about defendant's café on the designated occasion; that his father told him if he could help Carsten "in cleaning up this place, I want you to do it"; that Leo said he would cooperate in every way possible, and that on May 13th he and his partner picked Leo up at his home and met the other officers working on the case. This evidence was admissible for it tended to impeach Leo's testimony. (*People* v. *Rich,* 96 Cal.App.2d 579, 586-587 [215 P.2d 738]; *People* v. *Agajanian,* 97 Cal.App.2d 399, 405 [218 P.2d 114].) █ It was offered solely for this purpose and the jury was so instructed. It must be presumed the jury obeyed such instruction. (*People* v. *Dong Pok Yip,* 164 Cal. 143, 147 [127 P. 1031].)

Defendant also contends that "the district attorney committed prejudical error in his argument to the jury: (1) in making reference to testimony admitted solely for impeachment purposes; (2) in misrepresenting to the jury that counsel for appellant, for a number of years in trying cases prose-

cuted by the same deputy, has in every instance accused the investigating officers of dishonesty, and (3) in stating his personal opinion of the guilt of appellant to the jury." There is no merit in any of these contentions.

It is true that the prosecutor, in his argument, referred to the conversation between Leo, his father, and Officer Carsten without mentioning that this conversation was admitted solely for the purpose of impeaching Leo's testimony. However, defendant failed to make any objection to this argument when it was made, and did not request the court to admonish the jury concerning it. He may not, therefore, raise this question for the first time on appeal. (*People* v. *Temple*, 102 Cal.App.2d 270, 284 [227 P.2d 500]; *People* v. *Codina*, 30 Cal.2d 356, 362 [181 P.2d 881].)

It is only when such misconduct is of a flagrant character that it may be reviewed on appeal without previous objection or request for admonition. (See *People* v. *Podwys*, 6 Cal.App.2d 71, 75-76 [44 P.2d 377].) There was nothing in the prosecutor's argument in this case to take it out of the general rule applicable to such matters.

As to the second specification of alleged misconduct, counsel for defendant protested that the argument of the prosecutor was improper and "definitely a personality argument . . . that is not true." The court responded to defense counsel, ". . . I will take your word for it . . ." and then commented "I am sure the personalities between these two counsel won't influence the jurors very much." While the admonition might have been more specific, it was sufficient to indicate to the jury that such matters were not to be considered by them. Furthermore, there is no showing of prejudice and we are unable to see how any could have resulted.

The final claim of misconduct relates to the prosecutor's referring to the defendant as a "narcotic peddler" in his closing argument. This characterization of defendant was, however, prefaced by the expression "based on the evidence in this case." Thus the prosecutor was simply stating his views of what the evidence established. He has a right to do this. (*People* v. *Weber*, 149 Cal. 325, 340-341 [86 P. 671]; *People* v. *Patterson*, 118 Cal.App.2d 45, 48-49 [256 P.2d 992].) In the Weber case the prosecutor stated to the jury: "We believe . . . that the evidence in this case . . . points unerringly, points accurately, beyond the possibility of mistake, to this defendant as the murderer of Mary Weber." In holding that this was a legitimate comment the

court said (p. 341) : "It is of course improper for a prosecuting officer to assert his personal belief or personal conviction as to the guilt of an accused, if that belief or conviction is predicated upon anything other than the evidence in the case. But, upon the other hand, such prosecuting officer has the indisputable right to urge that the evidence convinces his mind of the accused's guilt. Indeed, it would be mere stultification if it were contended that the prosecuting attorney could argue to the jury that the evidence should convince their minds, although it did not convince his. A prosecuting officer, therefore, has the right to state his views, his beliefs, his conviction as to what the evidence establishes. [Citation.]"

The judgment and order denying the motion for a new trial are affirmed.

Moore, P. J., and McComb, J., concurred.