[Crim. No. 5361. Second Dist., Div. Two. July 19, 1955.]

THE PEOPLE, Respondent, v. PAUL R. THOMPSON, Appellant.

A. Brian Weinberg and Harold J. Ackerman for Appellant.

Edmund G. Brown, Attorney General, and James C. Maupin, Deputy Attorney General, for Respondent.

FOX, J.—Defendant was convicted of attempted extortion in violation of Penal Code, section 524. He appeals from the judgment of conviction and the order denying his motion for a new trial.

Defendant was manager of the Termite Company, which employed William Gerber. The latter's employment, however, was terminated around the middle of October, 1953. On May 29th of that year the Termite Company made a contract with Mr. and Mrs. Locke to do some termite work on their property. This work was commenced on the following June 3d or 4th. About the middle of October the Lockes wanted some additional work done. The Termite Company was aware of this. The work was performed by Gerber, who collected for it. He claimed he did it on his own after his employment with the Termite Company was terminated. Defendant, however, insisted that the Termite Company was entitled to the money for this job. In his effort to collect it from Gerber, he telephoned Mrs. Gerber on Saturday evening, October 24th. He asked her to relay a message to her husband, that he didn't want to talk to him. He said "he wanted the money that my husband collected for this Locke job, and if my husband didn't bring it in by Monday he would go down to the District Attorney's office and press charges for fraud and embezzlement." Mrs. Gerber asked defendant what he meant by that and further stated that she didn't feel that Mr. Gerber owed defendant any money. Defendant responded that she knew "perfectly well" what he meant—for her husband to bring him the money.

Mrs. Gerber next talked to defendant on the following Tuesday. On that occasion she called a Madison number that she got by telephone from the secretary at the office of the Termite Company. When she dialed the number a voice answered, "District Attorney's Office." This telephone was located at the May Company, in Los Angeles. It was Mrs. Thompson who answered the 'phone in this fashion. Mrs. Gerber asked to speak to Mr. Thompson. He then came on the line and said to her, ". . . I am down here at the District Attorney's office on other matters, and if you or your husband bring in the money to the office by fifteen of five, I

will call into my office to make sure you have brought it and the secretary will give you a receipt for it and if you have brought it in I won't press charges; otherwise I will go ahead.''

Mrs. Gerber told defendant she didn't think she had that much money around. He replied, ''Well, I imagine you know where you can get it.'' She said she would try.

After this telephone conversation Mrs. Gerber called Captain McClure at the district attorney's office. As a result, Lieutenant Sharp and Mr. McNair came to her house. They gave her $150 in marked money to turn over to defendant. Later the two men from the district attorney's office went into a bedroom, and checked to see if they could hear with the door open.

In the meantime, Mrs. Gerber received a call from defendant, who was at his office. Mrs. Gerber told him she was still willing to give him the money but she had no one to care for her baby so she couldn't leave her house. Defendant advised that he would come right out.

When defendant arrived at the Gerber residence Lieutenant Sharp and Mr. McNair were in the front bedroom. Defendant came into the living room. Mrs. Gerber asked him who he had seen at the district attorney's office. He said he had talked to a deputy district attorney. She then asked whether he was going to sign a complaint. He replied: ''Not if I get the $150.00.'' Mrs. Gerber thereupon inquired, ''Will the District Attorney's office prosecute even if I pay you the money?'' Defendant responded, ''They do not even know your name.'' Defendant further stated he was not going to have Mr. Gerber arrested and that ''This means nothing to me. I am only trying to get money for the company.'' He then said, ''It would be a shame to call Bill [her husband] in front of a judge. He might . . . have to go to jail, or he might get probation. It would be hard on the family.''

Mrs. Gerber gave defendant the $150 she had received from the men from the district attorney's office. Defendant gave her a receipt.

Defendant put the money in his pocket and left the house. The men from the district attorney's office followed him to his car, identified themselves and instructed him to return to the house.

Under questioning by Lieutenant Sharp, defendant admitted making the foregoing statements to Mrs. Gerber in her living room. He also admitted that Mrs. Thompson

answered the telephone at the May Company on October 27, 1953, and said "District Attorney's office" and that he had stated he would do anything to collect this bill. Defendant then produced the money Mrs. Gerber had given him.

Defendant urges two grounds for reversal: (1) Misconduct of the district attorney in his argument to the jury, and (2) erroneous exclusion of evidence. We find no merit in either.

█ The first incident of asserted misconduct on the part of the district attorney relates to his reference in his closing argument to a typewritten document (defendant's Exhibit B) that bore the name "Tom Jensen" in ink at the end thereof. This document was produced by defendant. Admittedly, the signature was not Tom Jensen's. On the witness stand Jensen told the jury many of the statements were incorrect and pointed out those that were false. In discussing this phase of the evidence the deputy district attorney told the jury: "Now, we don't know where that document came from. We don't know who put the signature of Tom Jensen on that paper, but it was produced by the defendant, Paul Thompson, and I think we can infer from that who prepared that false statement and who put that false signature on that paper. Mr. Thompson is the kind of a man who will accuse a stenographer of not telling the truth, inferentially, and yet offer as evidence a document which was false and which bears a false signature . . ."

In view of the source of the document, the lack of genuineness of what, on its face, would have appeared to be an authentic signature, and the testimony of Jensen as to the falsity of statements therein, it cannot be said that the comments of the district attorney were either unfair or improper. Clearly, they did not constitute misconduct. And, apparently, defendant's trial attorney* did not so regard them for he made no objection or request that the trial judge advise the jury to disregard them. Defendant is therefore in no position to raise this point on appeal. (*People v. Temple*, 102 Cal. App.2d 270, 284 [227 P.2d 500]; *People v. Codina*, 30 Cal.2d 356, 362 [181 P.2d 881].) █ As pointed out by this court in *People v. Lamendola*, 119 Cal.App.2d 570, 573 [259 P.2d 982], "It is only when such misconduct is of a flagrant character that it may be reviewed on appeal without previous objection or request for admonition." Obviously, the comment here does not fall into this category.

---

* Defendant has new counsel on appeal.

██ Defendant's second specification of misconduct on the part of the district attorney has to do with his comment to the jury in his closing argument relative to Thompson's part in causing Gerber to sign a completion notice before the work was done on a home improvement job on his home which was financed by an F.H.A. loan. The Termite Company had the contract to do this work. In a Borrower's Report of Irregularities to the F.H.A. Gerber had stated: "After the work was just barely begun, Thompson told me that I must sign the completion certificate so that they could get their money from the bank because they didn't want to tie up company money. Thompson said that he was not making any money on this job; he was just doing me a favor. He also implied that if I did not sign I would not be working there long. I could not afford to be out of work so I had no choice but to sign." In referring to this matter, counsel for defendant told the jury: "Here is a man, Gerber, that has committed two offenses in this deal. He signed a completion report, just a short time after the work started upon their own home. *That is a criminal offense.* He did termite work when he had no license. That is another criminal offense." (Italics added.)

In response to this argument the deputy district attorney said to the jury: "He [Mr. Babcock, the defendant's counsel] says, 'Look, Mr. Gerber committed a felony by signing a completion report on this work that was being done at his house.' But who forced him to sign that completion report? At whose insistence and urging did Mr. Gerber sign that completion report? Paul Thompson (indicating). So Paul Thompson is guilty of a felony—if there is such a felony; and Mr. Babcock, I assume, knows."

It is thus apparent that the deputy district attorney was merely trying to bring into proper focus the relation of each of the parties to this transaction which had been introduced into the case by defendant, and whose counsel had denominated Gerber's conduct in signing the completion notice before the job was completed as criminal. He was simply saying that Thompson's requirement that Gerber sign the completion notice when "the work was just barely begun" placed him in the same position as Gerber. The deputy district attorney did not actually charge Thompson with having committed a felony; rather, he disclaimed personal knowledge of the criminal character attributed to the conduct in question by defense counsel. When considered in the light of the evidence and the

nature of defense counsel's charges it cannot be said that the remarks of the deputy district attorney transcended the legitimate bounds of argument invited by opposing counsel. It is therefore clear that the charge of prejudicial misconduct on the part of the deputy district attorney is without substance. (*People* v. *Jackson,* 106 Cal.App.2d 114, 123 [234 P.2d 766] ; *People* v. *Rinesmith,* 40 Cal.App.2d 786, 792 [105 P.2d 1021].)

*People* v. *Wilkes,* 44 Cal.2d 679 [284 P.2d 481], cited by defendant, is without relevance. In the Wilkes case, the prosecuting attorney, in his oral argument, commented on the failure of defendant Wilkes' wife to testify with respect to a certain telephone call allegedly made to her by defendant at a certain time. The making of the telephone call was a part of an alibi defense. Upon counsel's objection to the comment and his request for an instruction to the jury on the right of a wife not to testify, the court stated: ''The question is not her right to testify, but whether or not the best evidence has been brought out by the party to whom it is available . . . I suppose you can discuss the phone call.'' The Supreme Court, in finding prejudicial error, observed that it was error for the prosecution to comment on the failure of a wife to testify; that under section 1322 of the Penal Code Wilkes had no power to produce his wife as a witness without her consent; that the prosecutor's comment ''erroneously and deliberately struck at the heart of defendants' only defense, their sharply controverted alibi''; and that the court aggravated the situation by ''indicating that there was anything 'better' as a matter of law about the testimony of Mrs. Wilkes than the testimony of defendants themselves.'' It is at once apparent that the factors found to constitute prejudicial error in the Wilkes case are not only wholly absent from the case at bar, but there is not even the remotest analogy between the two cases.

Defendant briefly argues that the court erred in excluding as hearsay a particular conversation he had with Gerber on the telephone. It is of course elementary that it is incumbent upon an appellant to show prejudice as a result of the court's ruling. Prejudice will not be presumed. Here defendant has failed to show prejudice because there is no suggestion as to the nature of the telephonic conversation. The trial court, as well as this court, are left entirely unenlightened as to what benefit defendant expected to derive from such testimony and how he was prejudiced by its exclusion.

For even assuming error in the rejection of evidence, in the absence of a showing of prejudice therefrom, a reversal is unwarranted. (Cal. Const., art. VI, § 4½.)

Defendant also complains that during the testimony of witness Martinez, an employee of the Termite Company, the court rejected testimony of a conversation between defendant and the witness, allegedly in Gerber's presence, purporting to show that the latter was fired on October 16th. Defendant insists that because of the conflict between his testimony and that of Mrs. Gerber as to when Mr. Gerber's employment with the company was terminated, he was entitled to have the testimony of Martinez to establish such date. However, it appears that Martinez was unable to establish this date with any certainty. At the court's suggestion, counsel for defendant had asked Martinez: "Do you know when he was discharged? A. *Well, I don't know definitely.* I only know what Mr. Thompson said after the meeting broke up." (Italics added.)

Assuming such evidence relative to Gerber's discharge was admissible its exclusion was not prejudicial since it was merely cumulative to evidence already introduced by defendant on this subject. Addressing itself to the same point, this court, speaking through Mr. Justice McComb, stated in *People* v. *Valencia,* 30 Cal.App.2d 126, 129 [86 P.2d 122], that: "The law is established that the erroneous exclusion of evidence is not *prejudicial* error where the excluded evidence is cumulative to other evidence which is introduced at the trial. [Citations.] In the instant case the trial court permitted other testimony that deceased had made threats against the defendant's life. Therefore, the excluded evidence was merely cumulative to evidence which was received during the course of the trial, and hence the error was not prejudicial to defendant." To the same effect, see *People* v. *Goldberg,* 110 Cal.App. 2d 17, 27 [242 P.2d 116], and 4 Cal.Jur. 10-Yr. Supp. (1943 rev.), section 600, pages 1002-1003.

The purported appeal from the sentence is dismissed. The judgment and order denying motion for new trial are affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied August 1, 1955, and appellant's petition for a hearing by the Supreme Court was denied August 17, 1955.