[Crim. No. 841. Fourth Dist. Dec. 18, 1951.]

THE PEOPLE, Respondent, v. JOSEPH JOHN LAMMERS, Appellant.

Dorris, Fleharty & Phillips for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant was convicted by a jury of the crime of violating section 288 of the Penal Code in committing lewd and lascivious acts on the body of a female child 8 years of age, on April 21, 1950.

The sole question involved in the instant appeal is whether the trial court was guilty of prejudicial misconduct in making certain statements to the foreman of the jury after the jury had deliberated about five hours and had returned to the courtroom and was at that time questioned by the trial judge as to whether it desired further instruction or desired any of the evidence read to it. In reply to this query by the court the foreman stated: "No, I believe not. They feel there is insufficient evidence for . . . BY THE COURT: Just a minute. Without telling me whether you stand for conviction or acquittal will you tell me numerically how the jury is divided, say nine to three or. . . . FOREMAN: The jury is divided nine to three. BY THE COURT: This is an important case and I am going to ask you to go back and try it again for a while. Will you do that? Maybe you can come to an agreement. FOREMAN: We really tried very hard, Your Honor. BY THE COURT: I might tell you that we had a jury here once that stood nine to three and they were out five days. You folks go back and try it . . . again, will you please?" The jury then returned to the jury room and in about two hours reached a verdict.

It is defendant's contention that the trial judge's statement, taken in conjunction with the statement of the foreman of the jury, could reasonably be interpreted by the jury that the judge was threatening the jurors that if they did not agree upon a verdict they might be kept locked up for five days longer or until they did agree; that as a result the jury returned a verdict of guilty within two hours. It is contended

that this action constituted prejudicial misconduct on the part of the judge, citing *People* v. *Talkington,* 8 Cal.App.2d 75, 88 [47 P.2d 368]; 85 A.L.R. 1418, and cases cited; *People* v. *Carder,* 31 Cal.App. 355 [160 P. 686]; *People* v. *Walker,* 93 Cal.App.2d 818 [209 P.2d 834]; and *People* v. *Crowley,* 101 Cal.App.2d 71 [224 P.2d 748].

In the Talkington case, in addition to the question as to the numerical standing on the innocence or guilt of the defendant, the court also strongly indicated that in his opinion the defendant was guilty and strongly intimated that if the jury did not bring in a guilty verdict they were not going to "get away." In that case the court also asked the jurors as to how they stood, i.e., whether for guilt or innocence. Other authorities are there discussed, including *People* v. *Miles,* 143 Cal. 636 [77 P. 666], where the judgment was affirmed because there were no remarks by the judge as to how the jury should decide the case. There the court told the jurors that the protracted character and expense of litigation necessitated the duty, on their part, to honestly and faithfully arrive at a verdict. In a concurring opinion, one justice remarked that such expressions were hazardous and it would be better for the court to say nothing on the subject.

In *People* v. *Carder, supra,* the court asked the foreman: "How many contrary ones are there?" And the juryman answered: "Two." The court replied: ". . . don't get contrary—go to work. . . . The court will be here any time when you agree." The court on appeal reversed the judgment and held that it was quite apparent from all the remarks of the trial judge that the jurors believed the judge was convinced of the defendant's guilt and that as honest men it was their duty to so find.

In *People* v. *Walker, supra,* after the jurors answered that they were ten to two for conviction, the court held the remarks of the judge created " 'the impression that he thought the jury ought to convict.' " And in *People* v. *Crowley, supra,* p. 75, the court remarked that:

". . . a conviction will not be allowed to stand if the court has made remarks to the jurors which might reasonably be interpreted as indicating the court's belief of the guilt of the accused, and if it also appears upon the entire record that the infringement upon the rights of the defendant resulted in a miscarriage of justice. . . .

"The courts have not hesitated to reverse convictions where trial judges have urged that an agreement be reached after

learning that a small minority of the jurors were holding out for acquittal. . . . It is manifestly true that insistence upon an agreement with knowledge that the jurors favoring acquittal constitute a small minority, is an indication of the court's belief that the verdict should be against the accused. The jurors would naturally suppose the court's remarks to be addressed to those who were in the minority.''

In *People* v. *Curtis,* 36 Cal.App.2d 306 [98 P.2d 228], it was held that it was not error for a court to inquire how the jurors are numerically divided so long as inquiry is not made for ascertaining how the jury is divided as to the innocence or guilt of the defendant, and that the province of the jury is invaded and reversible error is committed only when the inquiry of the court as to how the jury stands numerically is coupled with the purpose on the part of the court to ascertain how the jury is divided as to the innocence or guilt of the defendant. (See, also, *People* v. *Miles, supra,* p. 637; *People* v. *Selby,* 198 Cal. 426, 439 [245 P. 426]; and *People* v. *Rhodes,* 17 Cal.App. 789 [121 P. 935], where the rule is stated to be that where the jury reported to the court the general condition of their votes and their inability to agree, without stating the particulars of their votes and the court detained them for further consideration of the case, until they finally rendered a verdict, with remarks, when so detaining them which, when considered as a whole, were clearly intended as an explanation of the reason for detaining them and to impress upon them that the case was an important one, requiring their careful and dispassionate consideration, and wherein some sort of a verdict should be rendered without indicating that it should be a verdict of guilty, there was no indication of coercion or prejudicial error in such remarks, and the verdict should not be set aside on those grounds. (See, also, *People* v. *Finkelstin,* 98 Cal.App.2d 545, 561 [220 P.2d 934], where *People* v. *Walker, supra,* is distinguished.

In the instant case the record does not indicate that the court inquired nor was it informed as to whether the jury stood nine to three for acquittal or for guilt. The court indicated that it was an important case and asked that the jury go back and try again ''for a while.'' The remarks complained of did not necessarily indicate that if that jury did not agree the court would keep it locked up for five days. The proper interpretation would be that the judge asked the jury to go back and try again ''for a while,'' and

that maybe they could come to an agreement; that one jury once kept trying and stayed out five days and still stood nine to three. It was proper for the judge to point out that other juries had tried harder and for a much longer period of time to arrive at an agreement than had this particular jury. The judge did not say nor necessarily indicate that he once kept a jury out five days before he would discharge them. Possibly the remark may have been better left unsaid. However, under a fair interpretation of it, we conclude that such remark was not similar to the ones denounced in the cases relied upon by defendant and accordingly no prejudicial error resulted.

It is further argued that since the defendant was convicted on the uncorroborated testimony of a minor child under 14 years of age, the error was aggravated to the extent that a reversal of the judgment should follow and a new trial should be ordered. The evidence shows that while defendant was seated in the back seat of a car that had been parked by the child's mother while she was visiting a relative in a hospital one evening, defendant, who was wearing only his pajamas and a robe, committed certain acts denounced by section 288 of the Penal Code upon the child after he induced her to sit on his lap. We will not set forth the detailed acts. On arriving home that evening the child immediately complained to her mother, who found wet spots on her clothing and body which resembled semen. She also saw red blotches which covered the child's body. The defendant admitted that he hugged and kissed the child at the time at least twice, but claimed that these were innocent acts of kindness and were not "French kisses," as described by the little girl. Several days thereafter, the minor had a disturbance with her female organs, and after medical examination it was discovered that she had a gonorrhea infection.

Some medical testimony was produced by defendant indicating that he did not have gonorrhea at the time of the alleged offense, nor in June of that year. The question of the sufficiency and accuracy of the examination and tests made was an issue presented to the jury. It cannot be said that the testimony of the minor child, as to the acts charged, was uncorroborated.

Judgment and order denying a new trial affirmed.

Barnard, P. J., and Mussell, J., concurred.