[Crim. No. 3889.   First Dist., Div. One.   Dec. 29, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. ALBERT SIEGEL, Defendant and Appellant.

Arthur J. Lempert, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and John L. Burton, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, P. J.—Defendant appeals from a judgment of conviction, after jury trial, of "violation of Section 664 of the Penal Code . . . (Attempted Escape)" and from an order denying new trial.

QUESTIONS PRESENTED

1. Was defendant denied due process by the delayed indictment?

2. Of what crime was defendant convicted?

3. Exclusion of testimony concerning defendant's statements prior to leaving the jail tank.

4. Reference to wrong section in indictment.

### EVIDENCE

Defendant is represented on this appeal by court appointed counsel who has commendably performed his services.

Defendant was an inmate of the Santa Clara County jail charged with the commission of a felony. On the night of June 30, 1957, he was discovered in the courtyard of the jail, standing on a roof adjacent to the prison wall. James Veitenheimer, a fellow prisoner, was standing on defendant's shoulders. Veitenheimer was half way through the barbed wire. From the top of the roof to the top of the wall, excluding 3 feet of barbed wire that crests the wall, the distance is about 10 feet.

The attempted escape was frustrated when Sergeant Pantiga, during his rounds, noticed a flurry of activity in the courtyard, went into the "big tank" (a large cell), and discovered that the back door was opened and the lock gone. Going through into the courtyard he observed defendant and Veitenheimer as above stated, and ordered them to come down. They quickly complied. The sergeant asked defendant for an explanation. Defendant refused to tell him anything about the escape, stating that he did not know who got away or what had happened to certain doors leading to the courtyard which had their locks missing. (Actually a third prisoner did escape.) Defendant then said, "I will tell you the truth, Sarg. I was trying to escape. I have a long stretch to do. I have something hanging over my head, and I have to take the opportunity to escape, if I can."

Further investigation disclosed a rope braided from strips of blanket. One of the prisoners, called as a defense witness, testified that to his knowledge defendant did not open the door leading from the tank to the courtyard, and that defendant did not have anything to do with the planning of the escape. Another defense witness stated that both he and defendant had been asked by the planners of the escape to participate, but declined. He also said that defendant had gone into the courtyard to dissuade Veitenheimer from attempting to escape.

Defendant did not testify.

## 1. *Due Process.*

The attempted escape took place June 30, 1957. On July 19 an information charging defendant with attempted escape was filed. Thereafter defendant was tried on, and convicted of, the charge for which he was confined at the time of the attempted escape, a narcotics violation. On March 7, 1958, the information charging him with attempted escape was dismissed in the interests of justice. October 28, 1959, the judgment of conviction of the narcotics charge was reversed and the case remanded for new trial. (*People* v. *Diaz,* 174 Cal.App.2d 799 [345 P.2d 370].) Petition for hearing was denied by the Supreme Court December 23. On January 26, 1960, a complaint charging defendant with attempted escape was filed in the municipal court. On February 8 the indictment upon which defendant was convicted was filed. The municipal court action was then dismissed. The narcotics charge was then brought to retrial and defendant convicted thereof. Thereafter, this case was brought to trial.

Defendant contends ''that the dismissal of the information in 1958, followed by its exhumation in 1960, for the manifest purpose of harassment and vengeance is a flagrant abuse of Appellant's right to a speedy trial under Section 13 of Article I of the Constitution of California.'' (Defendant states that he is not contending that there was any violation of the time limitations set forth in § 1382 of the Penal Code.) The contention that the constitutional section is violated by failure to file an accusation speedily after the commission of a crime is flatly answered to the contrary in *People* v. *Aguirre* (1960) 181 Cal.App.2d 577, 579 [5 Cal.Rptr. 477], and in *People* v. *Ragsdale* (1960) 177 Cal.App.2d 676, 678 [2 Cal.Rptr. 640].

In *Aguirre* we stated, ''There is no requirement that a defendant be indicted or arrested at any particular time between the commission of a crime and the expiration of the time allowed by the statute of limitations as to that particular crime.'' No further discussion of the contention than appears in those two cases is needed. (See also *People* v. *Jordan* (1955) 45 Cal.2d 697, 708 [290 P.2d 484].)

## 2. *Of What Crime Was Defendant Convicted?*

It is difficult, if not impossible, to tell.

The indictment charged defendant with ''a violation of Section 664 of the Penal Code of the State of California (Attempted Escape) in that . . . *said defendant was a prisoner charged with a violation of section 11500 of the*

*Health and Safety Code* of the State of California (Sale of Heroin), a felony, and was confined at the Santa Clara County Jail . . . and did attempt to escape from the said jail.'' (Emphasis added.) It is clear from the indictment that defendant was charged with attempted escape by himself and not with aiding and abetting Veitenheimer to escape. The italicized portion is necessary in a charge for the defendant's own attempted escape, and has no place in an indictment charging a person, whether a prisoner or not, with aiding and abetting a prisoner to escape.

However, it appears from the argument of the district attorney and the instructions of the trial court that the jury, in effect, was instructed that it could find defendant guilty of the crime charged if they found either that he attempted to escape himself or assisted Veitenheimer to escape.

In his argument to the jury, the district attorney stated that as the evidence showed that defendant was on the roof with Veitenheimer on his shoulders there were only two possibilities for the jury to consider: one, that Veitenheimer and defendant were escaping together, or, two, that defendant was helping Veitenheimer to escape and then intended to return. He then stated that in either event defendant was guilty of an attempted escape because anyone who aids and abets is guilty of the offense himself. Defendant objected to this statement. The court, while it said that it would give the jury ''the correct law,'' refused to stop the district attorney from this type of statement, saying that the district attorney was entitled to comment on the law. The district attorney continued, then, to argue that as defendant was helping Veitenheimer to escape, he was guilty of the crime charged. Later he said, ''Either Mr. Siegel was trying to get out of the jail, attempting to escape, or at best he was helping Jim [Veitenheimer] and in that case he is guilty of an attempted escape.''

Defendant's counsel, in his argument, insisted that under the indictment defendant was only being charged with his own attempt to escape and not with assisting Veitenheimer to escape. It was defense counsel's theory, based upon the testimony of the two ex-convicts who appeared as witnesses for defendant, that defendant went out into the courtyard to try to persuade Veitenheimer not to attempt to escape, and that defendant was not out in the courtyard long enough to have climbed on the roof before Sergeant Pantiga went out there. Moreover, counsel contended that because of the height of the wall, defendant, if Veitenheimer got over it, would not

have been able unassisted to climb the wall; hence, defendant was not trying to escape.

After reading the charging portion of the indictment the judge then charged the jury that one who is confined in a county jail who attempts to escape therefrom, is guilty of a crime. This, of course, would refer only to defendant's own attempt to escape. After other instructions, on intent and on the effect of a direct, though ineffectual act to commit a crime, both apparently directed towards an attempt to escape personally there appear two instructions on aiding and abetting the commission of an offense.

After the jury had been deliberating for a time, the jury requested to have "some instructions reread. . . ." The foreman, when asked what the jury wanted reread, said, "The question is the charge for attempted escape." Thereupon the court reread the above-mentioned instructions but did not reread the two on aiding and abetting. When asked by the court if these were sufficient the foreman said that they were enough, but a juror said, "There seems to be some question about aiding or abetting." Thereupon the court reread the two instructions on that subject.

The court rejected defendant's two offered instructions to the effect that the only crime charged was defendant's own attempt to escape.

In view of the argument of the district attorney, the instructions of the court after defense counsel had argued that defendant was charged only with attempting to escape himself, its refusal of proffered instructions limiting the issue to the crime charged, and particularly of the desire of the jury to be instructed on aiding and abetting, it is clear that the jury believed it could convict defendant of the crime charged if it found that he was aiding and abetting Veitenheimer's attempt to escape. The evidence would support a finding that defendant was guilty both of attempting to escape himself and of assisting Veitenheimer to escape, had defendant been charged with both crimes. However, he was charged with only one. Clearly the other issue raised by the district attorney and instructed on by the court was an erroneous issue; the giving of the aiding and abetting instructions, and the refusal to give the limiting instructions offered by defendant constituted error.

This brings us to the question as to whether the error was prejudicial. The evidence was overwhelming as to the crime not charged, to wit, aiding and abetting Veitenheimer. But

we cannot consider that fact in determining the question posed here. The evidence that defendant was attempting to escape himself is very strong, particularly as defendant did not deny that he was attempting to escape, that is, he did not testify. But assuming that the evidence on this issue was overwhelming, are we not faced with another basic and decisive question? Can a reviewing court convict a person of a crime when the jury has not done so, or, at least, when it cannot be determined from the record that it has done so?     It is a fundamental requirement of the constitutional right to a jury trial and to due process that, where a jury is not waived, a jury must first determine the defendant guilty of the precise crime (or one necessarily included therein) with which he is charged, before an appellate court can determine whether or not the evidence substantiates his guilt.     Here, it is impossible to determine with reasonable certainty whether or not the jury found defendant guilty of the crime charged or of the crime not charged. Actually it would appear that the latter is the situation. See *People* v. *Dail* (1943) 22 Cal.2d 642, 653 [140 P.2d 828], where in dealing with instructions which could confuse the jury, the court held, ''Inconsistent instructions have frequently been held to constitute reversible error where it was impossible to tell which of the conflicting rules was followed by the jury.'' See also *People* v. *Feldman* (1959) 171 Cal.App.2d 15 [339 P.2d 888], where this court reversed a conviction for *concealing* stolen property when the indictment charged the defendant with *receiving* stolen property and where we pointed out that article VI, section 4½ of the Constitution, could not apply where an accused, charged with one crime, is convicted of another.

Although, in view of the evidence, we are reluctant to send the case back for another trial, we have no alternative because of the probability that defendant has been denied substantial constitutional rights.

### 3. *Exclusion of Defendant's Statements.*

As the case will probably be retried and as the question of the admissibility of certain testimony may be before the trial court, it becomes necessary to determine that matter for the guidance of the trial court. Defendant offered to prove by Ben Lafayette, a fellow prisoner with defendant, that after the doors between the big tank and the courtyard were opened, Veitenheimer solicited defendant's assistance in escaping, that defendant told Veitenheimer he was crazy in trying that and that defendant would not help him escape. The prosecution

objected on the ground that it would be hearsay. The court added, "Also self-serving." The court ruled that the testimony was inadmissible on both grounds.

In *People* v. *Silver* (1940) 16 Cal.2d 714 [108 P.2d 4] (murder) and *People* v. *Fong Sing* (1918) 38 Cal.App. 253 [175 P. 911] (murder) it was held that statements, similar in type to those here, were admissible as a part of the res gestae to show intent. In both of those cases the element of intent was important. ■ However, while intent would be important if the charge here had been that of aiding and abetting Veitenheimer, it may not be an element of the crime of attempted escape if the defendant goes beyond the limits of his custody. If there were evidence that the limit of defendant's custody was in the "big tank" then the moment he unauthorizedly would leave that custody, no matter what his intent, he would be guilty of escape, or at least, of an attempt to escape, even though he never got off the jail premises. (See *People* v. *Quijada* (1921) 53 Cal.App. 39 [199 P. 854]; *People* v. *Sharp* (1959) 174 Cal.App.2d 520 [344 P.2d 796].) If, on the other hand, the jail yard was the limit of his custody, the testimony would be admissible as a part of the res gestae. Thus the admissibility of the testimony depends upon the factual question of what were the limits of his custody.

### 4. *Wrong Section.*

■ Defendant points out that section 664, which is a general section on attempts to commit crimes, provides in part, "Every person who attempts to commit any crime, but fails . . . is punishable, *where no provision is made by law for the punishment of such attempts* as follows: . . . ." (Emphasis added.)

He then calls attention to section 4532, subdivision (b), which provides: "Every prisoner charged with or convicted of a felony who is confined in any county . . . jail . . . who escapes *or attempts to escape* . . . is guilty of a felony. . . ." (Emphasis added.) Thus it appears that the proper section to charge a felony prisoner with an attempt to escape from a county jail is section 4532, subdivision (b), and not section 664. ■ However, the error here is not prejudicial. The charging language of the indictment is exactly that which would support a charge under section 4532, subdivision (b). Defendant was fully apprised of the offense of which he was being tried—his own attempted escape—even though he was incorrectly being tried of aiding and abetting as well. The

mistake in the number of the section is unimportant. (*People v. Aresen* (1949) 91 Cal.App.2d 26, 36 [204 P.2d 389] ; *People v. Beber* (1951) 104 Cal.App.2d 359, 370 [231 P.2d 516].) The only practical difference between the two sections is the matter of punishment. ▮ Defendant, if convicted, would have to be sentenced as provided in section 4532, subdivision (b).

In view of our decision it is unnecessary to discuss the other contentions of defendant.

Judgment and order reversed.

Tobriner, J., and Sullivan, J., concurred.

A petition for a rehearing was denied January 24, 1962.