[Crim. No. 1599. Fourth Dist. Sept. 28, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. ANGEL DIAZ, Defendant and Appellant.

Angel Diaz, in pro. per., and Leonard H. McBride, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

STONE, J.*—Appellant was charged in a two-count amended information with conspiracy to escape, a violation of Penal Code section 182, subdivision 1, and with attempted escape, a violation of Penal Code section 4532, subdivision (a). He has appealed from a judgment of conviction of both counts.

The conspiracy and attempt to escape took place in the Orange County Jail. Appellant and two fellow inmates who participated in the attempted escape were charged with both counts, but a fourth conspirator who did not participate in the attempted break was not charged with conspiracy. In fact, he testified as a prosecution witness. There was testimony that the conspirators made plans for an escape, attempted to secure a gun from parties on the outside, that they made a sap by placing soap in a sock, and that they tore strips of cloth from a mattress to gag and bind the jailer. Most of the testimony connecting appellant with these preliminary acts came from one Masot, who was an active member of the conspiracy until shortly before the attempted escape occurred. ▉ Masot did not participate in the overt act because appellant Diaz told him not to go. Diaz gave this order an hour or so before the attempted break. The evidence does not support respondent's contention that the witness Masot disassociated himself from the plan and from his fellow conspirators, thereby removing him from the status of an accomplice. There is nothing to indicate any intention on the part of Masot to withdraw, or to indicate that he would not have joined the others in the escape attempt had Diaz permitted it.

Masot's relationship to the conspiracy is important since no cautionary instruction was given, as required by Code of Civil Procedure section 2061, subdivision 4. Aside from Masot's testimony, the evidence corroborating the conspiracy consisted largely of testimony by another inmate of the jail, one Cahill, who was not involved either in the conspiracy or in the attempted escape. His testimony concerning the conspiracy was rather weak, but in regard to the attempted escape it was clear and convincing. Shortly after the attempted break Cahill advised the officers that he knew nothing about the episode. Later he testified for the prosecution and explained

*Assigned by Chairman of Judicial Council.

44

the inconsistency by stating that he feared for his life when first questioned.

## Count One, Conspiracy

■ The court instructed the jury that the testimony of an accomplice must be corroborated, giving CALJIC 821 without modification. However, the cautionary instruction that the testimony of an accomplice ought to be viewed with distrust, was not given. The question whether the failure to give this instruction, required by Code of Civil Procedure section 2061, subdivision 4, is reversible error, must be determined from the record as a whole. (*People* v. *Koenig*, 29 Cal.2d 87 [173 P.2d 1]; *People* v. *Rogers*, 22 Cal.2d 787 [141 P.2d 722]; *People* v. *Dail*, 22 Cal.2d 642, 653 [140 P.2d 828]; *People* v. *Hamilton*, 33 Cal.2d 45, 51 [198 P.2d 873].)

The record reflects that most of the evidence proving the conspiracy came from the lips of the coconspirator, Masot; certainly the persuasive evidence came from him. Therefore it is quite probable that had the jury been instructed in the language of Code of Civil Procedure section 2061, subdivision 4, it might have returned a different verdict as to the conspiracy count. (*People* v. *Hamilton, supra.*) The paucity of evidence connecting appellant with the conspiracy, other than the testimony of his coconspirator, impels the conclusion that a cautionary instruction should have been given. It is immaterial that appellant failed to request such an instruction.

■ It is well settled that when an accomplice is called as a witness by the People, the court must instruct the jury as to the rules of law governing their consideration of the testimony of such accomplice. This is so even though no request is made for such an instruction by the defendant. (*People* v. *Miller*, 185 Cal.App.2d 59, 82 [8 Cal.Rptr. 91], and cases cited therein.)

## Count Two, Attempted Escape

As might be expected, the record reflects considerably more testimony concerning the overt act of attempted escape than is found concerning the conspiracy to commit the act. ■ Although the failure to fully instruct the jury as to the testimony of an accomplice was, in our opinion, reversible error as to the conspiracy because the proof thereof rested so largely upon the testimony of the accomplice, the failure to give the same instruction was not reversible error as to Count Two.

Masot was not an accomplice to the attempted escape since

he was not a participant therein. Even though Masot were to be considered an accomplice in the actual attempt to escape, failure to give the cautionary instruction was not reversible error because there is ample evidence in the record, aside from Masot's testimony, to support the jury's verdict of guilty as to Count Two.

The attempted break occurred when Jailer Walker went to a group of cells in tank five at 9 p.m. on February 14, to get a prisoner named Edlen. Walker ordered Edlen to come forward, and as he reached the entrance to the tank Walker opened the door but retained his grip on it, requiring Edlen to stoop under his arm. As this occurred, Walker was struck in the throat by a man whom he later identified as Diaz, the appellant. Diaz was joined in the attack by two other prisoners. Walker was struck over the head with some object, apparently soap in a sock; a hand was placed over his mouth to prevent his crying out, and an attempt was made to pull him into the tank. Walker slumped, feigning unconsciousness, then bit the hand that was over his mouth and shouted "break." Another deputy sheriff, one Horton, responded, but as he approached the four brawling men the three prisoners rushed back inside the tank and into cells, Diaz disappearing into cell two. There was testimony, including Walker's, that Diaz was wearing a green shirt at the time of the attack. Other testimony brought out that as Diaz ran into cell two he took off a green sport shirt and placed it on a bunk. Shortly after the attack Diaz came out wearing a white T-shirt and grey slacks, but no green shirt. Walker, somewhat dazed from the experience, could not immediately identify him. Later, however, Walker was able to identify Diaz, and testified positively that he was the man who approached him as Edlen was being removed through the door to the tank, and that it was Diaz who struck him in the face or throat.

Deputy Horton also testified that he saw Diaz run into the tank. The green shirt was found in cell two, where Diaz claimed to have remained during the entire fracas. Cahill, another inmate not involved in the attempted jail break, identified Diaz as one of the attackers, and further stated that he saw Diaz remove a green shirt as he ran back into cell two.

Appellant produced several inmates as witnesses on his behalf, all of whom denied seeing him participate in the attempted break. Appellant points to this conflict in the evidence and argues that the evidence is insufficient to sustain his conviction. He also vigorously attacks the credibility of

the prosecution's witnesses. The court answered a similar argument in *People* v. *Arenas,* 128 Cal.App.2d 594 [275 P.2d 811], at pages 600-601, thusly:

"In determining a similar contention urging insufficiency of the evidence because of the asserted weakness of the testimony given by the prosecuting witness as to identification of the accused, this court said in *People* v. *Alexander,* 92 Cal. App.2d 230, 234 [206 P.2d 657]: 'On the question of identification of the perpetrator of the crime, it has been repeatedly held by the courts of this state that such a question is essentially one for determination by the triers of fact, and that their verdict or decision will not be set aside unless the appellate court can say as a matter of law that there was no substantial evidence to support the conviction. [Citations.] Unless it can be said that the evidence of identity was so weak as to constitute practically no evidence at all, an appellate court is not entitled to set aside a jury's finding of guilt. [Citation.] In the instant case appellant has not met the burden imposed upon her to show that the identification evidence is inherently unbelievable. The claimed inconsistencies and uncertainties in the testimony of the prosecuting witness were matters which should have been directed to the attention of the jury, and cannot be urged upon appeal. [Citations.]

" 'What we have just said is equally applicable to the testimony in support of appellant's defense of alibi. The jury was authorized to stamp this testimony as false.'

"While the claimed weakness in the testimony of the witnesses for the prosecution as to identification, as well as other claimed weaknesses in their testimony, undoubtedly afforded ground for a forceful argument to the trier of facts, nevertheless, they cannot avail appellant as ground for reversal because the evidence identifying an accused as the perpetrator of the crime charged need not be positive and uncontradicted [citations]. While some of the witnesses were cautious in their identification, they expressed the belief that appellant was the person they had seen and it was for the trial judge to say what weight such evidence was entitled to [citation]." (See also *People* v. *Toth,* 182 Cal.App.2d 819, 832 [6 Cal.Rptr. 372]; *People* v. *Lint,* 182 Cal.App.2d 402, 412 [6 Cal.Rptr. 95].)

Appellant next asserts that he was denied a fair trial because the district attorney permitted a prosecution witness to testify falsely. The charge arises from the cross-examination of the People's witness Cahill, whose testimony

has been referred to above. Counsel for Diaz asked Cahill when he first discussed the case with the district attorney's office, and Cahill answered, April 17. Counsel for appellant quotes from the record of Cahill's case, showing that in March Cahill had a discussion with a member of the district attorney's office concerning the possibility of pleading guilty to a misdemeanor. Cahill discharged his attorney on April 17 and thereafter the district attorney recommended a county jail sentence for him, rather than one to state prison. Appellant argues that from this record it must be inferred that Cahill had discussed the case of Diaz with the district attorney long before April 17, and that the district attorney knew this. He contends that this conclusion is supported by the inference that the negotiations for a lighter sentence for Cahill resulted from his agreement to testify for the People against Diaz.

Certainly every defendant has the right to a fair trial, and the actions of the district attorney are circumscribed by this right. (*People* v. *Talle,* 111 Cal.App.2d 650, 677 [245 P.2d 633].) Suppression of evidence by knowingly permitting a witness to testify falsely would constitute improper conduct by the district attorney amounting to violation of this fundamental principle. The record before us, however, does not warrant appellant's conclusion that he was denied a fair trial. Cahill's negotiations to get his bad check charge reduced from a felony to a misdemeanor is routine procedure. Practically every defendant charged with a felony attempts to get the charge reduced to an included offense or to a less serious charge if he feels that he has no defense on the merits. For this Court to infer from Cahill's bargaining maneuver that he testified falsely and that he did so with the approbation of the district attorney, would be to reverse a conviction upon mere speculation. The fact that after the trial the district attorney intervened on behalf of Cahill in connection with imposition of sentence, falls far short of proof that Cahill lied and that the district attorney by silence condoned perjury.

Appellant makes an additional charge of bad faith relating to a question asked by the district attorney on redirect examination. Masot had testified that he witnessed the attempted jail break from a position in the open area between the wall of the tank and the cells within the tank. This open area forms a corridor leading to the tank door where the attempted escape took place. Masot said that his position was to the rear of Cahill. On cross-examination Cahill testified that just before the attempted break he had seen Masot in

cell two. On redirect examination the district attorney asked the question: ''Can you say that Terry Masot was not standing just immediately behind you there in the tank?'' Cahill answered, ''No, I cannot say that. he wasn't.'' Appellant assigns the question as misconduct warranting a reversal since a leading and suggestive question was utilized to rehabilitate one of the People's most important witnesses. The answer was given before defense counsel objected to the question upon the ground that it was leading and suggestive. In response to the objection the court stated: ''First of all, it calls for a conclusion. It is perfectly obvious, he told us he didn't know what went on behind him.'' Nothing further was said concerning the question and answer. If defense counsel was dissatisfied with the court's response to his objection, he should have made a motion to strike since the objection followed the answer. In view of the remarks by the court and the failure of counsel to press the matter, we find no misconduct amounting to a miscarriage of justice.

██ Appellant next asserts that the court sent the jury back for further deliberations under conditions which amounted to coercion. The case went to the jury at 2:05 p.m. At 10:05 p.m. the jury asked to have certain testimony read back to them. Following a reading of the testimony, one of the jurors asked for additional instructions or clarification of instructions. The court explained the questioned instructions, and sent the jury back for further deliberations; it then being 11:58 p. m. At the request of defense counsel, the court had the jury returned to the courtroom, whereupon he clarified the clarification of instructions previously given. The jury again retired to the jury room, at 12:05 a. m. The record best reflects what occurred from that point on, and we quote:

'' (12:35 A. M.)

''THE COURT: Mr. White, I am just calling you back at this time to find out, have you taken a ballot?

''JUROR WHITE: Yes, sir, we have.

''THE COURT: Due to the lateness of the hour I felt that I might inquire as to how you stand. I don't want to know which way you stand, but according to your last ballot, numerically only, what was the vote?

''JUROR WHITE: Eleven to one.

''THE COURT: May I ask this: How do you feel with regard to arriving at a verdict this evening?

''JUROR WHITE: It's impossible.

"THE COURT: All right. Are there any jurors who disagree with that conclusion on the part of your foreman?

"JUROR WOODRUFF: I would say there was a slim chance of arriving at it, I thought.

"THE COURT: Do you feel that further deliberation would be of any value? Let me ask for a show of hands of those think there might be some avail to further deliberations.

"JUROR WHITE: Your Honor, I believe we are all willing to deliberate further.

"THE COURT: I can't ask for more than that. All right. At this time you may return to the jury room. Thank you.

"(Whereupon, the jury retired to the jury room at 12:36 a. m.)

"(1:31 A. M.)

"THE COURT: Mr. White I have called you back just for the purpose of finding out how you feel about the prospects of arriving at a verdict.

"JUROR WHITE: We have made some progress.

"THE COURT: You have?

"JUROR WHITE: Yes, sir.

"THE COURT: Do you feel that you could make some further progress? Now, I don't want to put you on the spot. All I am concerned with is, I don't want to unduly keep you here at this hour of the night and it is strictly a matter for the jurors' determination as to whether or not they feel then can arrive at a verdict in this case.

"JUROR WHITE: I don't think I can honestly speak for us all. I think we are all willing to try it a little longer, and we are making progress.

"JUROR SEBRING: Are we supposed to submit any that we have already finished with?

"THE COURT: No, not at this time. Very well. Let me put it this way: So that I won't have to call you back, if you reach a point where you feel that you have reached the point—let's put it, will you just please notify us and I'll reconvene court at that time.

"JUROR WHITE: Yes, sir. Shall we set a tentative time limit or are you going to leave it up to us?

"THE COURT: Let me put it this way: I have to leave that to your discretion.

"JUROR WHITE: All right, sir.

"THE COURT: When you have reached the point where you feel that nothing further is to be availed, by further delibera-

50

tions, just let me know and that will be the end of it. Thank you.

"JUROR WHITE: Yes, sir. Thank you.

"(Whereupon, the jury retired to the jury room at 1:35 a. m.)

"(2:23 A.M.)

"THE COURT: Do you have a verdict, Mr. White?

"JUROR WHITE: Yes, your Honor."

Appellant cites the following from *People* v. *Goldberg,* 110 Cal.App.2d 17 [242 P.2d 116], at page 23: "Within reasonable limits, the trial judge is entitled to order the jury back for further deliberations as long as he believes there is a reasonable possibility of reaching a verdict. He cannot, of course, do so under circumstances that amount to coercion."

However, the court in *Goldberg* found no coercion, upon facts analogous to those before us, citing *People* v. *Lammers,* 108 Cal.App.2d 279 [238 P.2d 667], in which a collection of cases discussing coercion of juries by the court is analyzed. The discussion in *Lammers* discloses that the controlling factor is whether or not the court's remarks in sending the jury back for further deliberations indicates an opinion on his part as to the guilt or innocence of the defendant, and whether the court creates the impression that in his mind the jury ought to convict. (See cases cited and discussed at page 281 of *Lammers.*) The same principle is expressed by the Supreme Court in *People* v. *Tarantino,* 45 Cal.2d 590 [290 P.2d 505]. The language used by the trial court in the *Lammers* case is much more forceful than that used by the court in the case before us. There the court, after being advised by the foreman that it stood nine to three, said:

"BY THE COURT: This is an important case and I am going to ask you to go back and try it again for awhile. Will you do that? Maybe you can come to an agreement.

"FOREMAN: We really tried very hard, your Honor.

"BY THE COURT: I might tell you that we had a jury here once that stood nine to three and they were out five days. You folks go back and try it . . . again, will you please?" (P. 280.)

The jury returned to the jury room and in about two hours reached a verdict. It was held that the foregoing language did not constitute coercion. Since the court in our case left the matter of further deliberations to the jury, we do not construe his remarks as coercive in any respect.

Finally, appellant argues that reversible error ap-

pears on the face of the information. The pertinent Penal Code section is 4532, which defines the crime of escape or attempted escape by a prisoner who is in custody. Subdivision (a) concerns prisoners charged with or convicted of a misdemeanor, while subdivision (b) concerns prisoners charged with or convicted of a felony. The second count of the information in the case at bar charges appellant with attempted escape in violation of section 4532, subdivision (a) of the Penal Code. Appellant argues that he was being held in the Orange County Jail under a charge of felony, which would make part (b) applicable, while he was charged with attempted escape as a prisoner charged with a misdemeanor under part (a). For this reason he argues that the judgment of conviction must be reversed.

A comparison of subdivision (a) of section 4532 with subdivision (b) discloses that the two subdivisions differ only in those cases of escape or attempted escape in which no force or violence is used. As to escape or an attempt to escape by force or violence, the two sections are identical in every detail, including the sentence which may be imposed. Thus appellant discloses no prejudice to him resulting from the discrepancy in the information, and we find none in the record. In *People* v. *Siegel,* 198 Cal.App.2d 676 [18 Cal.Rptr. 268], a more pronounced error was made in the information in that the district attorney filed under the wrong code section. In the *Siegel* case the defendant was charged with attempt to escape, under Penal Code section 664, which section covers attempts to commit crimes in general, while the defendant should have been charged under Penal Code section 4532, subdivision (b) pertaining specially to attempt to escape. In holding that there was no reversible error, the court said, at page 683:

"Defendant points out that section 664, which is a general section on attempts to commit crimes, provides in part, 'Any person who attempts to commit any crime, but fails . . . is punishable, *where no provision is made by law for the punishment of such attempts* as follows: . . . .' (Emphasis added.)

"He then calls attention to section 4532, subdivision (b), which provides: 'Every prisoner charged with or convicted of a felony who is confined in any county . . . jail . . . who escapes *or attempts to escape* . . . is guilty of a felony. . . .' (Emphasis added.) Thus it appears that the proper section to charge a felony prisoner with an attempt to escape from a county jail is section 4532, subdivision (b), and not section 664. However, the error here is not prejudicial. The charging

language of the indictment is exactly that which would support a charge under section 4532, subdivision (b). Defendant was fully apprised of the offense of which he was being tried—his own attempted escape—even though he was incorrectly being tried of aiding and abetting as well. The mistake in the number of the section is unimportant. [Citations.] The only practical difference between the two sections is the matter of punishment."

The case at bar is even stronger that the *Siegel* case as under the facts of this case the punishment for attempt to escape by force or violence is the same under subdivisions (a) and (b) of Penal Code section 4532.

The judgment as to Count One is reversed; the judgment as to Count Two is affirmed.

Shepard, Acting P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied October 23, 1962, and appellant's petition for a hearing by the Supreme Court was denied November 21, 1962.