[Crim No. 3391.   Third Dist.   Apr. 1, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. BILLY LEE NAILS, Defendant and Appellant.

Fay Swan and Gordon Leslie Cooper for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Raymond Momboisse, Deputy Attorney General, for Plaintiff and Respondent.

FRIEDMAN, J.—Defendant appeals from a conviction of statutory rape alleged to have been committed on March 15, 1962. ▇▇▇ He has also noticed an appeal from an order denying his motion for a new trial. The latter order is not appealable (Pen. Code, § 1237) and that portion of the appeal is dismissed.

The prosecutrix, who was 17 years old at the time, testified that she was in love with the defendant, who had promised to divorce his wife and marry her. She testified to nine or ten prior acts of intercourse with defendant, including one occasion in the back seat of an automobile. This latter act, she said, occurred about Christmas 1961 when she and defendant went on a coon hunting expedition with ˙defendant's nephew, Lawrence Dunn, and a Rosalie Dobbs.

▇▇▇ Rosalie Dobbs was called as a defense witness. She had attended a coon hunting expedition about Christmas 1961 with defendant, Lawrence Dunn, and a girl whom she did not know. On cross-examination by the deputy district attorney, she said she believed the girl's name to be Juanita. She was then asked if she knew whether defendant had had sexual relations with Juanita during the coon hunt. The defense objection was overruled and the witness responded: "No, I couldn't say." Defendant assigns the court's ruling as error. Indeed it was error. Juanita and the prosecutrix were never identified as the same person. Evidence of sexual misconduct with persons other than the complaining witness was inadmissible. (Witkin, California Evidence, § 136, p. 159.) No

improper evidence entered the record, however, for the witness' response was a disclaimer of knowledge. No imputation one way or the other could be drawn from the question or answer. Consequently, the error was harmless. (*People* v. *Mullings,* 83 Cal. 138, 146 [23 P. 229, 17 Am. St. Rep. 223]; *People* v. *Ho Kim You,* 24 Cal.App. 451, 465 [141 P. 950].)

The next assignment of error arises from testimony of Bernice Goodwin, a sheriff's matron. The prosecutrix had testified to four telephone conversations with defendant (who was at liberty on bail) several months after the alleged offense, conversations in which defendant had avowed his love for her. One telephone call, she related, was made by her from the sheriff's office. She identified defendant as the other participant in that conversation. Mrs. Goodwin and Deputy Sheriff Cameron monitored this conversation on separate telephone extensions.

Mrs. Goodwin testified that on May 24, 1962, the prosecutrix placed a telephone call from the sheriff's substation in Broderick; that Mrs. Goodwin and Officer Cameron were listening on separate extensions; that the prosecutrix asked for Bill Nails; that the person at the other end of the line asked "Who is this?", to which the prosecutrix responded, "Deedee." (Other evidence established that "Deedee" was the nickname of the prosecutrix.) Then ensued a conversation between the prosecutrix and the other person. The latter asked the prosecutrix why she was putting him "through this," said that they could not go away together because "they would just catch up with us" and said "Baby, I love you." Learning on cross-examination that the person at the other end of the line had not specifically identified himself as Bill Nails, defense counsel moved to strike Mrs. Goodwin's testimony. Defendant assigns denial of the motion as error, asserting that since the participant in the conversation was not identified as defendant, the statements were therefore hearsay.

The argument is an afterthought, because defendant's trial counsel did not seasonably assert lack of foundation for Mrs. Goodwin's narration. In any event, identity of a party to a telephone conversation may be established by proof of recognition of his voice or by other evidence which satisfactorily indicates identity of the individual. (*People* v. *McGaughran,* 197 Cal.App.2d 6, 16 [17 Cal.Rptr. 121]; *People* v. *Horace,* 127 Cal.App.2d 366, 369 [273 P.2d 923].)

■ The prosecutrix had orally testified to the same telephone conversation and had identified defendant as the person with whom she was speaking. (See *People* v. *Albritton,* 110 Cal.App. 188, 195 [294 P. 76].) Further, the content of the statements, considered in relation to the remaining evidence, supplied a permissive inference that defendant was the speaker.

■ During defense counsel's argument to the jury, he assailed Officer Cameron's testimony identifying defendant as the party to the monitored telephone conversation, which the witness based on the person's familiarity with the details of the case. Counsel stated to the jury: ''I submit to you there are numbers of people who are very familiar with this case. It isn't Mr. Nails—he isn't the only one familiar with the facts of this case—.'' The trial judge interrupted at that point and said: ''Why don't you put them on the witness stand. Never mind commenting on what people on the outside know. Confine yourself to the record, please.''

The interruption and comment by the trial judge are assigned as prejudicial error. A trial judge has discretionary power to restrict argument within reasonable limits. (Pen. Code, § 1044; *People* v. *Cancimilla,* 197 Cal.App.2d 242, 253 [17 Cal.Rptr. 498]; 48 Cal.Jur.2d, Trial, §§ 90, 417.) Defendant was not prejudiced by the ruling or the remark. (See *People* v. *MacDonald,* 167 Cal. 545, 550 [140 P. 256]; *People* v. *Toth,* 182 Cal.App.2d 819, 830-831 [6 Cal.Rptr. 372].)

■ Defendant charges error of the trial court in commenting on the evidence. The comment under attack must be considered in the light of the following summary of the testimony: The prosecutrix testified that on the date of the alleged offense, she met defendant by prearrangement in back of her high school at 11:15 a.m.; that they drove in his black Ford automobile to a nearby cafe to ascertain the number of a telephone located outside the cafe; that defendant dropped her off at the school and that she went into the main office, complained that she was ill, and requested permission to go home. In accordance with practice, the clerk in charge requested her to call her home. Instead, she dialed the number of the outdoor telephone where defendant, pretending to be her father, was waiting to speak to the school clerk. After receiving permission to leave the school, she left the school building, where defendant picked her up and drove to a rural area. They stopped for a short while and necked, drove on a few more miles, found a place off the road and there had

sexual relations. They then returned and parked half a block from the school where a deputy sheriff patrolling the area approached the car. In response to his questions, the prosecutrix told him that she had been returning from a dental appointment, saw defendant passing by in his car and had hailed him for a ride back to school.

The deputy sheriff testified and identified the car as a black Ford. After instructing defendant to return the girl to school, the deputy followed them to the school where the girl left the defendant's car and entered the school building. The deputy identified defendant as the man in the car. His encounter with the prosecutrix and defendant occurred between 1 and 2 o'clock in the afternoon.

Two girl students testified that they had seen the prosecutrix left off at the school by a man in a dark Ford shortly after 11:15 a.m.; that shortly afterward the prosecutrix came out of the school building and drove away with the same man. They were not able to identify the man. Defendant took the stand and admitted bringing the prosecutrix to school in the afternoon, claiming that she had hailed his car and asked for a ride to school. He denied that he had been at the school or had picked her up during the morning hours. Alibi witnesses placed him elsewhere at that time.

The comment under attack was as follows: ''You have the right to take into consideration when the black car came back that it stopped—where it stopped to let her out to go to school a distance away from the school and the motor was turned off and they sat there talking, and they were observed by an officer. You have the right to take into consideration where they were during that interval they were gone, and also the fact that the defendant in this case was the man in the car when she returned, and also you have the right to take into consideration the testimony of these girls that identified her when she got out of the car when she returned with the defendant.''

The court's statement was part of an extended comment on the evidence interspersed in the formal instructions to the jury. It was made following the standard jury instruction that corroboration of the prosecutrix' testimony was not essential. (CALJIC No. 503.) By way of comment, the court informed the jury that lack of a corroboration requirement did not prevent them from considering circumstances other than those to which the prosecutrix testified. In enumerating

the circumstances which the jury might consider, the court made the statement now under attack.

Appellant urges that the court's comment assumes a fact in issue, that is, that it was defendant who had picked up the girl at school in the morning. Defendant, however, had denied the morning occasion and had produced alibi witnesses to place himself elsewhere during the late morning hours. Further, the comment mistakenly assumes that the two pupils had testified to the afternoon occasion when defendant had dropped prosecutrix off at the school. Actually, these pupils had described events during the morning when a man had picked up prosecutrix at the school.

Arguably, by telling the jury that it could consider "where they were during that interval they were gone," the trial judge implied that defendant had not only brought the prosecutrix to school that afternoon, but had picked her up during the morning and had been with her during the entire interval. An equally permissible inference is that the court was referring only to the admitted fact that defendant had picked her up that afternoon to bring her to school, and that they were sitting in the car a half block from the school when accosted by the deputy sheriff, thus that they were "gone" or absent together. The court's mistaken assumption that the two girl students had identified prosecutrix when she returned in defendant's car was not harmful, because defendant admitted being with her in the car at that time.

Granting that the court's comment was open to inferences not completely established by the evidence, we do not believe that it resulted in a miscarriage of justice. It was made in the context of extensive jury instructions, including the requisite instruction that the jurors are the sole judges of the evidence. (*People* v. *Daugherty,* 40 Cal.2d 876, 892 [256 P.2d 911].) The jurors were also given an instruction (BAJI No. 5) that they were not to draw any inferences from statements of the court and were to disregard any seeming expression of the court's opinion as to the facts. ▮▮▮ The trial judge is entitled to comment on a single phase of the evidence, on the credibility of a single witness, and even to express his opinion as to guilt or innocence, so long as he refrains from contentiousness and partisanship. (*People* v. *Friend,* 50 Cal.2d 570, 577-578 [327 P.2d 97].) ▮▮▮ Although a judicial comment which distorts the evidence is error (*People* v. *Friend, supra,* 50 Cal.2d at 577), there was no distortion in the sense of a wilful or serious twisting; rather

there was an arguable inference which, *if drawn by the jurors*, was not in harmony with the admitted facts. In view of the relative insignificance of the comment, the argumentative character of the inferences now urged on appeal and the court's formal instructions defining the independent role of the jury, there was no reasonable probability that the remark influenced the jury's verdict.

Lastly, defendant argues that the verdict was coerced. The jury retired for deliberations during the early afternoon. Court was reconvened twice for the rereading of certain testimony and various instructions. About 9:45 p.m. the foreman informed the court that they were divided 8 to 4 and that "We would like to try a little longer." The court asked them to retire and resume deliberations. Approximately 25 minutes later the jury sent word that they were unable to agree and court was reconvened. When asked how the jury stood, the foreman stated that they were now divided 10 to 2. The court told the jury that if there was any probability of a verdict, it would rather send the jury back to resume deliberations, saying: "We have been here longer than this." At 11:20 p.m. the jury returned with a verdict of guilt.

The procedure did not result in a coerced verdict. (*People* v. *Burton*, 55 Cal.2d 328, 356 [11 Cal.Rptr. 65, 359 P.2d 433]; *People* v. *Tarantino*, 45 Cal.2d 590, 600 [290 P.2d 505]; *People* v. *Diaz*, 208 Cal.App.2d 41, 50 [24 Cal.Rptr. 887]; *People* v. *Goldberg*, 110 Cal.App.2d 17, 23 [242 P.2d 116].) There was no indication whether the polling gravitated toward conviction or acquittal. The controlling factor is whether the court's actions or remarks intimated an opinion as to guilt or innocence and whether the court created the impression that the jury ought to convict. (*People* v. *Diaz, supra*, 208 Cal.App.2d at 50.) No such intimation occurred here.

Judgment affirmed.

Pierce, P. J., and Schottky, J., concurred.