[Crim. No. 4381. First Dist., Div. One. Mar. 20, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. RICHARD M. CUADRA, Defendant and Appellant.

Robert K. Winters, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Michael J. Phelan, Deputy Attorney General, for Plaintiff and Respondent.

BRAY, P. J.—Defendant appeals from judgment, after jury verdict, convicted him of violation of section 4531, Penal Code (escape).

## QUESTIONS PRESENTED.

1. Was there proof that defendant was in lawful custody at the time of his escape?

2. Alleged prejudicial remarks of the judge.

## RECORD.

November 30, 1956, defendant was convicted of first degree robbery and sentenced to state prison for the term prescribed by law. On February 18, 1963, defendant was received at the Parlin Fork Forestry Conservation Camp near Fort Bragg, Mendocino County, operated by the Department of Corrections.

On the night of February 26, 1963, defendant left the camp without permission. He was apprehended the next day in Crescent City. He was charged with escape (a violation of Pen. Code, § 4531), tried by a jury and convicted.

No contention is made that, assuming that defendant was in lawful custody at the camp, the evidence was insufficient to justify his conviction of escape. For that reason the evidence will not be detailed. At the trial defendant contended that the proof of lawful custody was insufficient. He made the same contention on the hearing of his motion for new trial, which motion was denied.

## 1. WAS DEFENDANT IN LAWFUL CUSTODY?

Section 4531, Penal Code, provided in pertinent part: "Every prisoner committed to a State prison who escapes or attempts to escape . . . from any prison road camp, prison forestry camp, or other prison camp or prison farm or other place while under the custody of prison officials, officers or employees . . . is punishable by imprisonment in a State prison for a term of not less than one year and on conviction thereof the term of imprisonment therefor shall commence

from the time such prisoner would otherwise have been discharged from said prison."[1]

In a prosecution under section 4531 proof must be made primarily that the person charged with escape was (1) a prisoner committed to a state prison, and (2) that he was "under the custody of prison officials, officers or employees" at the time he escaped from a prison forestry camp. This, of course, means under the *lawful* custody of such persons.

At trial, the prosecution rested before any evidence had been offered on any of these subjects, other than the fact that defendant was confined at Parlin Fork Forestry Camp. There was no evidence as to the nature and character of Parlin Fork Forestry Camp. Defendant moved for an instructed verdict upon the ground that the burden of proof necessary to meet the above requirements had not been met. Thereupon the prosecution moved to reopen the case, which motion was granted and the evidence hereinafter discussed was admitted.

People's Exhibit 3 was admitted in evidence. This consisted of two documents: (1) a photostat of a certified copy of the minutes of the Los Angeles Superior Court of November 28, 1956, in *People* v. *Cuadra,* adjudging defendant guilty of the crime of robbery, that he be imprisoned in the state prison for the term prescribed by law, and ordering defendant to be remanded to the custody of the Sheriff of Los Angeles County, to be delivered into the custody of the Director of Corrections at the California State Prison at Chino. This document is commonly called a "commitment." This photostated certified copy of the commitment was attached to the second document, which purported to be a certificate of the Warden of San Quentin, under seal of the Warden and purporting to be signed by an Associate Warden, certifying that the before-mentioned commitment, attached photograph and fingerprints were true copies of the originals in his custody. This certificate was offered to comply with section 969b, Penal Code, which reads: "For the purpose of establishing prima facie evidence of the fact that a person being tried for a crime or public offense under the laws of this State has been convicted of an act punishable by imprisonment in a state prison, county jail or city jail of this state, and has served a term therefor in any penal institution ... the rec-

---

[1]The section was repealed after the events in question here, and section 4530, Penal Code, amended to provide for escape. (Stats. 1963, ch. 1784.) The old section is applicable here.

ords or copies of records of any state penitentiary, reformatory, county jail or city jail, or federal penitentiary in which such person has been imprisoned, when such records or copies thereof have been certified by the official custodian of such records, may be introduced as such evidence.''

Defendant objected to the admission of these documents on the grounds that there was no proof of the genuineness of the signature nor proof of the authority of the one signing; also that section 969b applies only to proving records of persons having a *prior* conviction and who *have served* (not are serving) a term in prison. The court overruled the objection and admitted as People's Exhibit 3 the certificate and attachments, after deleting therefrom certain conclusions as to what other records of the prison showed.

Inasmuch, as will hereinafter appear, as the certified copy of the commitment attached to the certificate was admissible to show that defendant had been lawfully committed to the custody of the Director of Corrections, and the evidence showed defendant still to be in his custody, and further that the certificate itself showed no more than that defendant had been received by the Department of Corrections at Chino on December 12, 1956, and that attached photograph and fingerprints were true copies of the originals in the custody of the Warden at San Quentin, we deem it unnecessary to determine whether or not the Warden's certificate was admissible. Assuming, arguendo, that it was not admissible, the commitment attached to it was admissible.

Section 1905, Code of Civil Procedure, provides: ''A judicial record of this State, or of the United States, may be proved by the production of the original, or by a copy thereof, certified by the clerk or other person having the legal custody thereof. That of a sister State may be proved by the attestation of the clerk and the seal of the court annexed, if there be a clerk and seal, together with a certificate of the chief judge or presiding magistrate that the attestation is in due form.''

 It is a part of the clerk's duties (see Gov. Code, §§ 26800, 26803, 26831, 26832, 26833; Code Civ. Proc., §§ 153, subd. 5, 1893, 1904, 1905) to make and certify copies of the records and papers in his keeping, and where such a duty is imposed on him by law, his certificate may be accepted as conclusive of the facts recited therein. (Code Civ. Proc., § 1893; *Baker* v. *Snyder* (1881) 58 Cal. 617, 618; *Hayward Lumber & Inv. Co.* v. *Biscailuz* (1957) 47 Cal.2d 716, 722-723 [306 P.2d 6].)

 The commitment was certified by the clerk of the superior court issuing the commitment and hence was admissible without any certificate from a prison warden to the effect that such commitment was in the prison records. The fact that it was attached to and admitted with the inadmissible warden's certificate did not affect its admissibility. It was properly in evidence and was evidence that defendant had been ordered into the custody of the Director of Corrections.

 The evidence then clearly showed that at the time of the escape defendant was in the custody of a camp maintained by the Director of Corrections and in the particular custody of two "correction officers."[2]

Defendant testified that he first went to prison in 1956, was out on parole for about 14 months, went back to prison in 1962 for parole violation, had been at five forestry camps and at the time of the escape had been at the Parlin Fork Forestry Camp about a week.

The commitment showing defendant to have been committed to the custody of the Director of Corrections and the evidence showing that defendant was in that custody at the Parlin camp established a prima facie showing of the lawfulness of his custody. Defendant at no time claimed that he was not in lawful custody. This defense was that after leaving camp that night he became "lost" and had not intended to escape. His own testimony did not support this defense. He intentionally left the boundaries of the camp, later claimed to have become "lost." However, he found his way into the town of Fort Bragg, there hitchhiked a ride to Crescent City, and spent the rest of the night in a motel. The next day he went out on the highway to get a ride to his "folks' place." He was picked up by officers who were looking for escapees from the county jail. Defendant does not

---

[2] "The Director of Corrections is the chief administrative officer of the Department of Corrections." (Pen. Code, § 5053.)

"The supervision, management and control of the State prisons, and the responsibility for the care, custody, treatment, training, discipline and employment of persons confined therein are vested in the director." (Pen. Code, § 5054.)

"All powers and duties granted to and imposed upon the Department of Corrections shall be exercised by the Director of Corrections . . . ."

"Whenever a power is granted to the Director of Corrections or a duty is imposed upon the director, the power may be exercised or the duty performed by a deputy of the director or by a person authorized pursuant to law by the director." (Pen. Code, § 5055.)

attack the sufficiency of the evidence to support the jury's finding of escape.

2. The Judge's Remarks.

██ On the cross-examination of defendant he stated that after leaving camp he came to a place where apparently he and the other inmates at one time had fished, but the fishing had been stopped by the camp authorities. He was then asked where he went on the evening of the 26th (the night of the escape). He stated that he and two other inmates walked up the road further than he had ever gone before. (It is not clear whether this road led to the fishing area.) He was then asked to point out on the map where he went on his fishing trip, and where he walked from to get there. The court interrupted: "Now, I assume—Let's get this straight what you are asking this witness: Are you asking him questions about the day that he escaped? Mr. Underwood [Deputy District Attorney]: Yes. The Court: Or are you talking about the time he went fishing and he got a fish and cooked it and got caught? Mr. Underwood: No, I am talking about with the other—with the other inmates on the day you say you got lost?" No objection was made at the trial to the court's statements[3] nor was any assignment of error made concerning them. Defendant now contends that the court's statements constituted prejudicial misconduct, in that the comment by the judge assumed that defendant had escaped. While perhaps the judge could have used a less ambiguous word than "escaped," it is clear from the context that he was using it in the sense of defendant having left the camp rather than in its legal connotation. Moreover, had the matter been called to the judge's attention he could, and undoubtedly would have cleared up the ambiguity. "If defendant felt that the trial court's casual remark prejudiced his rights in any way, he should have called the matter to the trial judge's attention at the time rather than attempt to predicate error thereon on appeal. [Citations.]" (*People* v. *Langdon* (1959) 52 Cal.2d 425, 434 [341 P.2d 303].) Finally, the remark could not possibly have been prejudicial, as there is no doubt under the evidence that defendant did escape, in any connotation of the word.

The judgment is affirmed.

Sullivan, J., and Molinari, J., concurred.

---

[3]Defendant was there represented by the public defender. He is represented on this appeal by an attorney appointed by this court.