[No. A025374. First Dist., Div. Four. Oct. 21, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN NICHOLAS BLACK, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Certified for publication except as to parts I, II, and IV. (Cal. Rules of Court, rules 976(b) and 976.1.)

**COUNSEL**

William A. Resneck, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**CHANNELL, J.**—After a court trial, appellant John Nicholas Black was convicted of receiving stolen property (Pen. Code, § 496); possession of

marijuana for sale (Health & Saf. Code, § 11359);[1] possession of codeine (§ 11350, subd. (a)); possession of psilocybin (§ 11377); and two counts of possession of methamphetamine for sale (§ 11378). He was sentenced to four years and four months in state prison.

On appeal, Black contends that: (1) a search warrant affidavit did not establish probable cause; (2) failure to disclose an informant's identity deprived him of a fair trial; (3) the search of a Winnebago mobilehome was illegal; and (4) insufficient evidence supports one of his convictions for possession of methamphetamine for sale. We reject each contention and affirm the judgment.

## *I. PROBABLE CAUSE TO ISSUE SEARCH WARRANT

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## III. MOBILEHOME SEARCH

In the early morning hours of November 10, 1982, Officer James Jacobson of the Concord Police Department was on routine patrol when he noticed a slow-moving Winnebago mobilehome twice cross the center divider line. He recognized the driver as John Black. When he turned to follow the vehicle, Black began to drive faster than the speed limit, made an unsignaled turn, stopped the vehicle, and turned out its lights. The vehicle was also missing the front license plate.

Jacobson left his patrol car, went up to the front of the Winnebago, and shined his flashlight inside. The Winnebago appeared to be empty, but a curtain was drawn in the back. Believing Black was driving under the influence, Jacobson twice ordered him to step out of the vehicle without receiving a response. Officer Theodore M. Spyrow, who joined Jacobson, knocked on the rear window of the Winnebago and called for Black, who stepped out. Black appeared to be intoxicated and Jacobson administered a field sobriety test.

The officers noticed a strong smell of marijuana coming from the driver's area of the mobilehome. Jacobson found marijuana in the driver's area. Subsequent searches of the Winnebago turned up more marijuana and a white powdery substance, among other items. The Winnebago was locked up and Black was arrested.

---

[1]All statutory references are to the Health and Safety Code, unless otherwise indicated.
*Parts I and II of this opinion are not certified for publication. (See fn., *ante,* at p. 506.)

Later that day, Officer Al Cruz of the Concord Police Department Narcotics Bureau spoke with Black. After hearing and waiving his *Miranda* rights, Black signed a consent to search the vehicle for more drugs. Black testified that Cruz told him that if the night search of the vehicle was improper, any evidence found as a result of another search would be inadmissible. Cruz denied this, testifying that he told Black he thought he had probable cause to obtain a search warrant and could impound the vehicle, but that Black could expedite the search by consenting to it. When Cruz searched the Winnebago, he found bindles containing methamphetamine,[6] plastic bags, coin envelopes, a funnel coated with a white powdery residue, a ledger, and other narcotics paraphernalia. Black's motion to suppress (Pen. Code, § 1538.5) was denied.

■ Black contends that evidence obtained from the Winnebago must be suppressed because each search was illegal. He contends that police may not search a mobilehome without first obtaining a search warrant, because a mobilehome is not a "vehicle" within the meaning of the vehicle exception to the search warrant requirement. The Winnebago searches led to a charge that Black possessed methamphetamine for sale (§ 11378) in November 1982, *after* the June 1982 effective date of Proposition 8. As such, federal constitutional standards, rather than independent state constitutional grounds, apply when determining whether a search is proper. (*In re Lance W.* (1985) 37 Cal.3d 873, 890 [210 Cal.Rptr. 631, 694 P.2d 744]; *People v. Smith, supra,* 34 Cal.3d at pp. 258-264; see Cal. Const., art. I, § 28, subd. (d).)

The United States Supreme Court recently faced the question of "whether law enforcement agents violated the Fourth Amendment [to the United States Constitution] when they conducted a warrantless search, based on probable cause, of a fully 'mobile motor' home located in a public place." (*California* v. *Carney* (1985) 471 U.S. —, — [85 L.Ed.2d 406, 410-411, 105 S.Ct. 2066].) Finding that the mobility of the motorhome placed the warrantless search within the scope of the vehicle exception to the search warrant requirement, the United States Supreme Court offered this explanation of the rationale of the vehicle exception:

"When a vehicle is being used on the highways or . . . is readily capable of such use and is found stationary in a place not regularly used for residential purposes—temporary or otherwise—the two justifications for the vehicle exception come into play. [Fn. omitted.] First, the vehicle is obviously readily mobile by the turn of a switch key, if not actually moving. Second, there is a reduced expectation of privacy stemming from its use as a licensed

---

[6]The total amount of methamphetamine seized during the several Winnebago searches was 3.1 grams. Some methamphetamine was found before Cruz obtained the consent to search and some was found after consent was given.

motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling. At least in these circumstances, the overriding societal interests in effective law enforcement justify an immediate search before the vehicle and its occupants become unavailable. . . . [¶] [The] application of the vehicle exception has never turned on the other uses to which a vehicle might be put. The exception has historically turned on the ready mobility of the vehicle, and on the presence of the vehicle in a setting that objectively indicates that the vehicle is being used for transportation." (471 U.S. at p. — [85 L.Ed.2d at pp. 414-415].) For the same reasons cited in *Carney,* we find the evening Winnebago searches were within the scope of the vehicle exception to the search warrant requirement.

Acting with probable cause, officers may conduct a warrantless vehicle search that is as thorough as that which a magistrate could authorize in a warrant. (*United States* v. *Ross* (1982) 456 U.S. 798, 823 [72 L.Ed.2d 572, 592, 593, 102 S.Ct. 2157]; see *California* v. *Carney, supra,* 471 U.S. at p. — [85 L.Ed.2d at p. 413].) Black's obvious intoxication and "fair-to-poor" response to the field sobriety test, combined with the smell of marijuana emanating from the Winnebago constituted probable cause to believe that contraband might be contained within the vehicle. (See *Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 571-573 [128 Cal.Rptr. 641, 547 P.2d 417].) Under the vehicle exception to the search warrant requirement, this probable cause justified the search of the entire vehicle and all of its contents, including containers, that might conceal contraband. (*United States* v. *Ross, supra,* 456 U.S. at p. 825 [72 L.Ed.2d at p. 594]; *People* v. *Chavers* (1983) 33 Cal.3d 462, 466-467 [189 Cal.Rptr. 169, 658 P.2d 96].)

Black's written consent justifies the search of the Winnebago the following morning. Black contended that Officer Cruz improperly obtained this consent; Cruz denied this. This factual dispute was resolved against Black when the trial court denied his suppression motion. We see no evidence to persuade us that the consent was involuntary. ■ Assuming arguendo that Cruz did induce Black to consent to another search by telling him that if the evening search was improper, then any evidence found as a result of the subsequent search would be inadmissible, we would still find no error. The evening search *was* proper and did not taint Black's consent to search the Winnebago again the next morning.

*IV. SUFFICIENCY OF EVIDENCE TO SUPPORT CONVICTION OF POSSESSION OF METHAMPHETAMINE FOR SALE

. . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

---

*Part IV of this opinion is not certified for publication. (See fn., *ante,* at p. 506.)

Sabraw, J., concurred.

Poché, Acting P. J., concurred in the result.