[No. A037259. First Dist., Div. Four. June 21, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
MARY ANN BISHOP, Defendant and Appellant.

## COUNSEL

Mary G. Swift, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Christopher J. Wei and Karl S. Mayer, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**POCHÉ, J.**—Defendant Mary Ann Bishop appeals from the judgment of conviction for violating Penal Code section 4534.[1] Resolution of this appeal necessitates an examination of that statute's reach, the sufficiency of evidence necessary for such a conviction, as well as how it is to be punished.

### BACKGROUND

In June of 1986, Robert Danielson was being tried for murder at the Mendocino County courthouse at Ukiah. Defendant is his mother.

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

At approximately 8 a.m. on June 12, Mendocino Deputy Sheriffs Larry Arnold and Frank Noyes were escorting Danielson from the county jail to the courthouse. As they parked their vehicle on the street, Arnold saw defendant standing in front of the courthouse. The deputies accompanied Danielson through the courthouse doors. Danielson, whose hands were cuffed in front of him, pushed open the door. He was closely followed by Noyes and then Arnold. Defendant approached the trio from the area of some chairs placed outside an office. Danielson halted. Defendant had her left hand inside her coat ("[l]ike . . . Napoleon" in Arnold's words); her right hand remained at her side. She came so close to Danielson that Arnold believed she and Danielson "actually touched." Noyes testified that defendant "could have touched him [Danielson] easily." After Noyes ordered defendant to "Stop it and get back there," defendant promptly retreated to the area of the chairs, her left hand still inside her coat. Neither of the deputies heard any words pass between defendant and Danielson. Because they were positioned behind Danielson, neither Noyes nor Arnold could see whether defendant attempted to hand anything to Danielson, or whether Danielson moved his hands towards her.

The deputies took Danielson to the holding facility and initiated procedures to have defendant arrested. Defendant left the courthouse and drove away, colliding with a parked vehicle and coming close to running down several pedestrians.

Alerted by Mendocino authorities and provided with a description of defendant and her vehicle, Sonoma County law enforcement authorities came upon defendant sleeping in her locked automobile near midnight that day. After entering through a window they had broken, the officers arrested defendant and searched the vehicle. Retrieved from a purse on the front seat was a loaded .357 revolver. ■ ■■■■ The officer also found a loaded .25 semi-automatic pistol in a windbreaker; some letters from Danielson to defendant; and a second purse containing a handcuff key.[2] A further search

---

[2] Defendant moved in the trial court, pursuant to section 1538.5, for an order suppressing evidence obtained as a result of this encounter on the ground that the officers' entry did not comply with the so-called "knock-notice" provisions of section 844. The trial court conducted an evidentiary hearing on the motion and denied it, ruling that defendant's automobile was not a "house" within the language of section 844.

Designed to protect the privacy and security of persons in their homes (see *Duke v. Superior Court* (1969) 1 Cal.3d 314, 321 [82 Cal.Rptr. 348, 461 P.2d 628]), section 844 has been found inapplicable to settings not being used as a dwelling place. (See *People v. Maita* (1984) 157 Cal.App.3d 309, 323 [203 Cal.Rptr. 685] [theater]; *People v. James* (1971) 17 Cal.App.3d 463, 467 [95 Cal.Rptr. 121] [political party headquarters]; *People v. Sanchez* (1969) 2 Cal.App.3d 467, 472-474 [82 Cal.Rptr. 582] [abandoned house]; *People v. Medina* (1968) 265 Cal.App.2d 703, 708 [71 Cal.Rptr. 586] [abandoned garage]; cf. *People v. Cook* (1982) 135 Cal.App.3d 785, 793 [185 Cal.Rptr. 576] ["We assume without deciding the question that the purposes underlying Penal Code section 844 may support its application to motor vehicles *being used as a residence*"] [italics added].) If a motor home is not to be treated as a house for

of the vehicle was made three days later after a search warrant had been obtained. Among the items at that time recovered were food, a compass, binoculars, handcuffs, rope, a belt with a knife, and a receipt in defendant's name for the .25 pistol dated May 3, 1985.

The .357 revolver was stolen in Oregon by one Paul Mortimer, who spent time in an Oregon jail with Danielson from February of 1985 through July of 1985. Defendant deposited funds in the inmate trust accounts of Danielson and Mortimer.

Defendant's roommate testified that Danielson would regularly make collect telephone calls to defendant (evidence corroborated by telephone company records), and that defendant had received two telephone calls from Danielson around 9 p.m. on June 11. The roommate further testified that she awoke to find defendant fully dressed at approximately 3:30 a.m. later that night, and that defendant had left their apartment by 6 a.m. Defendant never returned to the apartment, nor did she report for work at 9 a.m. that morning as expected.

Defendant testified on direct examination that she approached her son at the courthouse merely to tell him "I decided I'd go to Oregon for the time being." She did not touch Danielson in her abortive attempt to do so. She admitted on cross-examination that Danielson had outlined escape plans ("There were lots of plans") in several of the letters later found in her vehicle,[3] and that he had previously talked about escaping from the Oregon

purposes of the Fourth Amendment (*California* v. *Carney* (1985) 471 U.S. 386, 393-394 [85 L.Ed.2d 406, 414-415, 105 S.Ct. 2066]; *People* v. *Black* (1985) 173 Cal.App.3d 506, 508-510 [219 Cal.Rptr. 355]), for purposes of construing the identical term in section 844, that status certainly cannot be given to the sedan in which the officers found defendant. The trial court's ruling must consequently be sustained.

[3] One of the letters was read to the jury. Dated June 3, 1986, it read: "Dear Mom. [¶]I can't figure out anything new. If you don't think you can get it in the car out here, we will have to go with the old plan of bumping with each other at the courthouse door. I'll go over it briefly again. Be there by 7:40 a.m. at the latest, sit in one of those chairs by the doors, have the .357 under a sweater or a light jacket. When you see us park, get ready to step up to the door. Be holding the .357 by the barrel. It only takes twenty to thirty seconds to get to the door after we park. When you see us park, stand about three feet back from the doors. Stand right to the center of where they meet when they are closed. When I come in, I'll put my back to the door and as I push the door open with my back, I'll turn as the door opens. And as I face you, you should be in position so I can't help but to bump into you. As I turn to bump into you, my body will block their view of you. Pull the sweater or whatever off the .357 with your free hand. Hold it in at waist level. That's easiest for me to take it from you.

"As soon as I get it from you, I'll turn right back around and tell them to freeze. If they don't do it, very quickly step behind them, unsnap their holsters, take their guns, and drop them in your purse. Go right straight for the car. We'll be right behind you. Leave both doors unlocked, both front windows rolled down, keys in the ignition. I'll make them get in the back seat so make sure it's empty. From the instant I bump into you, the whole thing should take no more than sixty to seventy seconds. If they don't freeze when I tell them to, you just get to the car as fast as possible and leave. If I get away, I'll take their car.

jail. Although defendant never had any intention of helping Danielson escape, she conceded that she may have let Danielson believe she would assist him. Defendant thought that defendant's talk of escape was "his giving me hope or . . . maybe it helped him."[4] She bought the handcuff key, which she assumed was for use in an escape, because Danielson told her to do so and "it would ease his mind." Escape was not discussed in the two telephone conversations defendant had with Danielson on the evening of June 11.

Defendant further testified that "I didn't take a gun into the courthouse." The .357 revolver had been given to her by an unidentified man at the time of one of her visits to Danielson while he was in the Oregon jail. She carried both weapons in her vehicle at all times. She bought the .25 pistol for "protection." The food found in her vehicle had been cooked by defendant in the early morning hours of June 12 before she left for the courthouse. Defendant is 59 and alcoholic. She consumed a considerable quantity of vodka prior to going to the courthouse. This accounted for her holding her hand inside her coat as she approached Danielson and the deputies: "When I drink a lot, I have a pain in my side. . . . [I]t helps to hold [it]."

### REVIEW

#### *Section 4534*

Defendant's contentions on this appeal are premised on her construction of the statute she stands convicted of violating. As defendant views it, the only attempt condemned by section 4534 is the attempted escape of a prisoner. Because Danielson did not attempt to escape, defendant claims she is guilty of nothing more than attempting to assist a planned escape that never came near success, conduct not covered by section 4534. She asserts that she could only be charged and convicted of violating section 4534 in conjunction with section 664, the general attempt statute.

Section 4534 provides in full: "Any person who willfully assists any paroled prisoner whose parole has been revoked, any escapee, any prisoner confined in any prison or jail, or any person in the lawful custody of any

---

"You can wait a couple of minutes over at the drug store. If I don't show up in two or three minutes, take off and go on about your business. Let's set it for Wednesday the 11th. If someone is in the hallway, wait and we'll try it Thursday. The key to the whole thing is passing the .357 quickly and successfully as possible before they realize what's happening. It may be a good idea to go down Monday or Tuesday and go in the doors like I will do. Put your back to the door, push it open. At the same time turn to face inside, then you will see where you should be standing when I do it.

"That's about all for now. Thanks for everything. Love always, Bob."

[4] Defendant was aware that at some previous point in time Danielson had in effect escaped: "He was on work release, I believe, and took off." This probably occurred in Oregon, where Danielson was apparently charged with homicide.

officer or person, to escape, or in an attempt to escape from such prison or jail, or custody, is punishable as provided in Section 4533." If the operative language is extracted, the statute reflects a dual prohibition against "Any person who willfully assists any . . . prisoner . . . to escape" as well as "Any person who willfully assists any . . . prisoner . . . in an attempt to escape." ■ Defendant correctly treats section 4534 as requiring the involvement of the prisoner: "One can only assist another in doing something that other is himself endeavoring to do." (*Merrill* v. *State* (1933) 42 Ariz. 341, 345 [26 P.2d 110, 112]; see *Hurst & Hill* v. *The State* (1885) 79 Ala. 55, 58.) Without such involvement, what occurs is rescue—the unilateral deliverance of the prisoner by another person (see *People* v. *Murphy* (1933) 130 Cal.App. 408, 410 [20 P.2d 63]; *People* v. *Hernandez* (1976) 64 Cal.App.3d Supp. 16, 20 [134 Cal.Rptr. 620]; Perkins & Boyce, Criminal Law (3d ed. 1982) p. 568)—which is prohibited by section 4550.[5] But the entangling involvement is mutual. Neither prisoner nor assistant can be viewed in isolation. Both are united in their object and in their liability.

Section 4534 is a comprehensive effort to deal with all aspects of willful assistance provided to escaping prisoners. The prohibitory emphasis of the statute is assistance; escapes or attempted escapes are merely the particularized contexts of the prohibition's operation. Success and failure receive like attention. The statute is a unified treatment of assistance provided to both attempts and completed escapes, with identical punishment for both crimes. (See *People* v. *Lozano* (1987) 192 Cal.App.3d 618, 628-633[237 Cal.Rptr. 612]; see also discussion on "Punishment," *post*.) This lack of differentiation is the Legislature's established practice in statutes dealing with unauthorized departures from places of confinement or detention. (See §§ 107, 109, 2042, 4011.7, 4133, 4530, 4532, 4550; Welf. & Inst. Code, §§ 871, 1768.7, 3002, 7326; but cf. §§ 1026.4, subd. (a), 1370.5, subd. (a), 4536, subd. (a); Welf. & Inst. Code, § 1152.)

The similarity and overlap of sections 664 and 4534 may be conceded. The essential elements needed for an attempted escape, which if assisted is forbidden by section 4534, are indistinguishable from those constituting an offense that might otherwise be punishable by section 664. (See *People* v. *Gallegos* (1974) 39 Cal.App.3d 512, 516 [114 Cal.Rptr. 166].) Nevertheless, statutes which, like section 4534, cover both attempts and completed escapes have been construed to be independent of section 664. (See *People* v. *Oppenheimer* (1965) 236 Cal.App.2d 863, 864-865, 867-868 [46 Cal.Rptr. 476]; *People* v. *Diaz* (1962) 208 Cal.App.2d 41, 51-52 [24 Cal.Rptr. 887]; *People* v. *Siegel* (1961) 198 Cal.App.2d 676, 683-684 [18 Cal.Rptr. 268].)

---

[5] Section 4550 provides for the punishment of "[e]very person who rescues or attempts to rescue, or aids another person in rescuing or attempting to rescue any prisoner from any prison, or prison road camp or any jail or county road camp, or from any officer or person having him in lawful custody, . . ."

The law of attempts is relevant only if a person is charged with violating section 4534 by willfully assisting an attempted escape. Demonstrating that an escape was attempted would thus be an element of one of the offenses prohibited by section 4534, which is providing assistance to that attempt. Any other conclusion would deprive the trier of fact of knowledge of the context which makes sensible the acts prohibited by the statute. That knowledge is crucial, for it focuses the trier's attention to what is prohibited by section 4534: the statute does not forbid all assistance, but only that which is transactionally related to an escape or attempted escape.

If an escape is actually effected, the law of attempts would be completely irrelevant to the question of whether a person was guilty of section 4534 by willfully assisting that escape. With respect to successful or unsuccessful escapes, the crucial focus is directed to whether willful assistance is present and proven. It is assistance that is the substantive evil prohibited by section 4534.

Precisely what constitutes assistance will depend upon the precise context. For purposes of aiding and abetting liability under section 31, assistance has been accepted as synonymous with aid. (See, e.g., *People v. Terry* (1970) 2 Cal.3d 362, 401 [85 Cal.Rptr. 409, 466 P.2d 961]; *People v. Markus* (1978) 82 Cal.App.3d 477, 481 [147 Cal.Rptr. 151]; *People v. Vasquez* (1972) 29 Cal.App.3d 81, 87 [105 Cal.Rptr. 181]; *People v. Belenger* (1963) 222 Cal.App.2d 159, 163 [34 Cal.Rptr. 918]; *People v. Masters* (1963) 219 Cal.App.2d 672, 679 [33 Cal.Rptr. 383]; *People v. Etie* (1953) 119 Cal.App.2d 23, 28 [258 P.2d 1069]; *People v. Bond* (1910) 13 Cal.App. 175, 185 [109 P. 150].) Examples of assistance that may constitute aiding and abetting within the escape context are set forth in the margin.[6]

---

[6] "It has been consistently held that one who was present for the purpose of diverting suspicion, or to serve as a lookout, or to give warning of approach of anyone seeking to interfere, or to take charge of an automobile and to keep the engine running and to give direct aid to others in making their escape, is a principal in the crime committed. Any one of the above purposes mentioned would be sufficient upon which to base . . . aiding and abetting . . . ." (*People v. Silva* (1956) 143 Cal.App.2d 162, 169 [300 P.2d 25]; accord *People v. Masters, supra,* 219 Cal.App.2d 672 at p. 680; *People v. Ketchum* (1960) 185 Cal.App.2d 615, 619 [8 Cal.Rptr. 607].) Assuming that knowledge and intent can be demonstrated (see *People v. Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318]), guilt as an aider and abetter may thus be premised upon (1) a person furnishing a vehicle outside a place of confinement for the purpose of effecting the getaway of an escaped prisoner; (2) a person intending to drive a getaway vehicle provided by another; (3) one prisoner offering to help another prisoner escape by warning of approaching guards; or (4) one prisoner offering to stop a guard's attempting to apprehend an escaping prisoner. Liability would also be proper in examples (3) and (4) in the absence of a formal offer of assistance or conspiratorial agreement (see *People v. Durham* (1969) 70 Cal.2d 171, 181 [74 Cal.Rptr. 262, 449 P.2d 198]; *People v. Belenger, supra,* 222 Cal.App.2d 159 at p. 163), or if the acts promised are performed. (Cf. *People v. Cayer* (1951) 102 Cal.App.2d 643, 650-651 [228 P.2d 70]; *People v. Macchiaroli* (1921) 54 Cal.App. 665, 667 [202 P. 474].) Unlike the court in *People v. Hernandez, supra,* 64 Cal.App.3d Supp. 16, we believe that a person poised to throw a rope over prison walls to a

Equivalent latitude should be given to the definition of assistance for purposes of section 4534.

■ In order to sustain a conviction for violating section 4534 by willfully assisting an attempted escape, the prosecution must prove (1) that a person in lawful custody attempted to depart from the limits of that custody (see CALJIC No. 7.30 (1979 rev.) ("Escape—Defined"); *People* v. *Davis* (1985) 166 Cal.App.3d 760, 764, fn. 3 [212 Cal.Rptr. 673]); (2) that another person provided assistance (3) with the specific intent to facilitate the prisoner's efforts to exceed the confines of lawful custody. (Cf. *People* v. *Beeman, supra,* 35 Cal.3d 547.) As previously mentioned, the first element may be satisfied upon an examination of the activities of both the prisoner and the assistant. If it is determined that there was an attempted escape, the trier of fact then backtracks to determine whether the accused willfully assisted that attempt.

■ Certain passages in defendant's brief convey the suggestion that she is arguing for recognition of the offense of attempting to assist an attempted escape. We have found it impossible to conceptualize what type of conduct would constitute such an offense, which our researches show has never been accepted in any state of this nation. The only authority on this point is hostile to defendant's position. Construing a statute similar to section 4534, the Supreme Court of Georgia stated: "The offense charged is the act of assisting one under legal arrest in an attempt to escape. It is itself a crime, and not an attempt to commit a crime, . . ." (*Perry* v. *The State of Georgia* (1879) 63 Ga. 402, 404.) In light of the preceding discussion, we reach the identical conclusion.

The central focus of section 4534 is upon whether assistance was provided to an escape or attempted escape. If the factual predicate of either of these events is proven upon an examination of the actions of both the prisoner and the assistant, matters have necessarily proceeded beyond the stage where assistance could be merely attempted. ■ ■ Even an unfulfilled promise of help will qualify as assistance because it is a factor relied upon by the prisoner in the mental calculus of determining to try an escape. (See fn. 6, *ante.*) The willful assistance forbidden by section 4534 has already been completed. For this reason alone section 664, which makes culpable "[e]very person who attempts to commit any crime, but fails, or is prevented or intercepted in the perpetration thereof," is inapplicable—assis-

---

waiting inmate could be prosecuted as an aider and abettor. Conviction can be based on driving others to a place of confinement where the others intend to assist an escape, or in furnishing information which facilitates an escape or attempted escape. (Cf. *People* v. *Tewksbury* (1976) 15 Cal.3d 953, 960 [127 Cal.Rptr. 135, 544 P.2d 1335].) Words alone might constitute indirect aid if they amount to incitement, instigation, or advisement. (See *People* v. *Francis* (1969) 71 Cal.2d 66, 72 [75 Cal.Rptr. 199, 450 P.2d 591]; *People* v. *Durham, supra;* CALJIC No. 3.01 (1984 rev.) ("Aiding and Abetting—Defined").)

tance has been provided and the perpetration of the crime prohibited by section 4534 has been completed.

Defendant's contention that sections 4534 and 664 encompass the nonexistent offense of attempting to assist an attempted escape, must consequently fail as inconsistent with common sense, the statute's plain language, and the Legislature's obvious intent. (See *In re Haines* (1925) 195 Cal. 605, 621 [234 P. 883]; *In re Ernest M.* (1977) 71 Cal.App.3d 890, 894 [139 Cal.Rptr. 773]; *People* v. *Armstrong* (1961) 188 Cal.App.2d 745, 748-749 [10 Cal.Rptr. 618].)

## Evidence

Is there substantial evidence that defendant willfully assisted the attempted escape of her son? In light of the preceding discussion, we undertake the following examination to ascertain (1) whether there was an attempted escape, and (2) whether defendant willfully assisted it.

■ Conviction for attempted commission of a crime requires proof of the specific intent to commit that crime, and an act done toward its commission. (*People* v. *Memro* (1985) 38 Cal.3d 658, 698 [214 Cal.Rptr. 832, 700 P.2d 446]; *People* v. *Buffum* (1953) 40 Cal.2d 709, 718 [256 P.2d 317]; *People* v. *Broussard* (1977) 76 Cal.App.3d 193, 197 [142 Cal.Rptr. 664].)
■ Conceding the issue of intent, defendant contends that the conduct of Danielson and herself never went beyond preparation.

■ The act required as the second element necessary for conviction has been described in a variety of ways. It has been called a " 'direct ineffectual act' " (*People* v. *Memro, supra,* 38 Cal.3d 658 at p. 698), "unequivocal" (*People* v. *Gallardo* (1953) 41 Cal.2d 57, 66 [257 P.2d 29]), or "overt" (*People* v. *Dillon* (1983) 34 Cal.3d. 441, 454 [194 Cal.Rptr. 390, 668 P.2d 697]), which will qualify as an "appreciable fragment of the crime" (*People* v. *Buffum, supra,* 40 Cal.2d 709 at p. 718) or as " *'direct movement* . . . [that] must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation.' " (*People* v. *Miller* (1935) 2 Cal.2d 527, 530 [42 P.2d 308, 98 A.L.R. 913] [original italics].)[7] Whatever the label, the general import is clear: the act must have some significance—even if slight—in facilitating commission of the intended offense. It is, however, subject to this important limitation: " 'It is equally well settled that there is a material difference between the preparation antecedent to an offense and the actual attempt to commit it. The preparation consists of devising or arranging the means or measures necessary for the commission of the offense, while the attempt is the direct

---

[7] Cf. *Hyde* v. *United States* (1912) 225 U.S. 347, 388 [56 L.Ed. 1114, 1134, 32 S.Ct. 793] (dis. opn. of Holmes, J.): "There must be dangerous proximity to success."

movement toward its commission after the preparations are made. In other words, to constitute an attempt the acts of the defendant must go so far that they would result in the accomplishment of the crime unless frustrated by extraneous circumstances'" (*People* v. *Memro, supra* [citing and quoting *People* v. *Werner* (1940) 16 Cal.2d 216, 221-222 [105 P.2d 927]]; accord *People* v. *Anderson* (1934) 1 Cal.2d 687, 690 [37 P.2d 67]; see *People* v. *Seach* (1963) 215 Cal.App.2d 779, 783 [30 Cal.Rptr. 499]) or "interrupted by circumstances independent of the will of the attempter." (*People* v. *Buffum, supra*.) Yet it must be remembered that "slight acts done in furtherance of that design [to commit the crime] will constitute an attempt, and the courts should not destroy the practical and common-sense administration of the law with subtleties as to what constitutes preparation and what constitutes an act done toward the commission of a crime." (*People* v. *Fiegelman* (1939) 33 Cal.App.2d 100, 105 [91 P.2d 156]; accord *People* v. *Memro, supra; People* v. *Fratianno* (1955) 132 Cal.App.2d 610, 626 [282 P.2d 1002].)

■ Defendant's contention that her conviction lacks the support of substantial evidence is to be examined according to well-established principles. Our task in reviewing this claim is not to determine whether this court believes that her guilt has been proven beyond a reasonable doubt. ■ "'When the sufficiency of the evidence is challenged on appeal, the court must review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a[ny] rational trier of fact could have found the defendant guilty beyond a reasonable doubt.' [Citations.] In applying this test, we must 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'" (*People* v. *Fosselman* (1983) 33 Cal.3d 572, 578 [189 Cal.Rptr. 855, 659 P.2d 1144]; see *People* v. *Lucero* (1988) 44 Cal.3d 1006, 1020 [245 Cal.Rptr. 185, 750 P.2d 1342]; *People* v. *Johnson* (1980) 26 Cal.3d 557, 576-578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]; *Jackson* v. *Virginia* (1979) 443 U.S. 307, 318-319 [61 L.Ed.2d 560, 573, 99 S.Ct. 2781].) ■ "And in the case of a prosecution for attempt, an additional rule is applicable. Acts that could conceivably be consistent with innocent behavior may, in the eyes of those with knowledge of the actor's criminal design, be unequivocally and proximately connected to the commission of the crime; it follows that the plainer the intent to commit the offense, the more likely that steps in the early stages of the commission of the crime will satisfy the overt act requirement." (*People* v. *Dillon, supra,* 34 Cal.3d 441 at p. 455.)

■ Preparation there undoubtedly was. The presence of cooked food, survival gear, and at least one weapon in defendant's vehicle fully qualifies as "'means or measures necessary for the commission of the offense.'"

(*People* v. *Memro, supra,* 38 Cal.3d 658 at p. 698.) Acting in accordance with Danielson's directives (see fn. 3, *ante*), defendant drove her loaded automobile to the courthouse on the date specified by Danielson. Waiting outside, she observed Danielson arrive with the escorting deputies. Defendant then went into the courthouse and stationed herself at the place designated by Danielson. After Danielson and the deputies entered the courthouse,[8] defendant then came up to Danielson. She had her hand under her coat as Danielson wished. Whether defendant was actually holding the .357 revolver beneath the coat is not established by the record, but we must presume the jury found that defendant was armed and that she intended to pass the weapon to Danielson. It was at this point that Deputy Noyes's firm command for defendant to "Stop it and get back there" brought matters to a halt. The only steps undone were Danielson getting his hands on the weapon and making good his escape.

Is the requisite overt act discernible? There is no point to undertaking an independent analysis of each of defendant's actions because just about anything she did once she arrived at the courthouse will satisfy the requirement. Her simple entry into the courthouse with a concealed weapon would probably suffice. (See *People* v. *Anderson, supra,* 1 Cal.2d 687 at p. 690; *People* v. *Gilbert* (1927) 86 Cal.App. 8, 9-10 [260 P. 558]; *People* v. *Moran* (1912) 18 Cal.App. 209, 211 [122 P. 969].) By any standard, the totality of defendant's actions in the courthouse shows the implementation of a train of events that advanced to the very brink of success. Those actions " 'amount to the commencement of the consummation' " (*People* v. *Miller, supra,* 2 Cal.2d 527 at p. 530) of the plan to free Danielson. The scheme was derailed only because of Deputy Noyes's command to defendant. Danielson's intended escape was thus frustrated by the extraneous circumstance of the deputy's intervention. (See *People* v. *Memro, supra,* 38 Cal.3d 658 at p. 698; *People* v. *Buffum, supra,* 40 Cal.2d 709 at p. 718.) ▓▓▓▓ Because "the requisite overt act 'need not be the last proximate or ultimate step towards commission of the substantive crime' " (*People* v. *Dillon, supra,* 34 Cal.3d 441 at p. 453 [citing and quoting *People* v. *Staples* (1970) 6 Cal.App.3d 61, 67 [85 Cal.Rptr. 589]]), the fact that defendant did not pass a weapon to Danielson does not preclude us from sustaining the jury's implicit determination that defendant's actions had passed beyond the preparatory stage. The evidence which satisfies the overt act requirement also qualifies as one proof of defendant's assistance. The only commonsense conclusion possible is that defendant's conviction is supported by abundant substantial evidence of her willfully assisting her son's attempted escape.

---

[8] We note in passing that the fact of Danielson preceding the deputies through the courthouse door as he intended (see fn. 3, *ante*) could satisfy the overt act requirement necessary to find that he actually attempted to escape.

(See *People* v. *Memro, supra,* at pp. 698-699; *People* v. *Dillon, supra,* at pp. 455-456; *People* v. *Fosselman, supra,* 33 Cal.3d 572 at p. 578.)

## Instructions

Defendant's contentions that the trial court should have instructed the jury sua sponte on attempt as a lesser included offense, that her trial counsel was constitutionally incompetent for not requesting such instructions, and that the jury should have been provided with a verdict form giving the jury the option of convicting her of attempt are answered by the preceding discussion concerning section 4534.

The argument that a sua sponte instruction was required is simply another means by which defendant persists in misperceiving that the liability provided by section 4534 is not necessarily dependent upon an attempt which is punishable by section 664. The jury was instructed on attempt with CALJIC Nos. 6.00 ("Attempt—Defined"), 6.01 ("Abandonment Of Attempt—When Not A Defense"), and 6.02 ("Abandonment Of Attempt—When A Defense") for the purpose of deciding whether defendant and Danielson had attempted an escape. It is patently obvious that no actual escape occurred,[9] given that Danielson did not break free of his escorting deputies' custody. (See *People* v. *Davis, supra,* 166 Cal.App.3d 760 at p. 764, fn. 3; *People* v. *Gallegos, supra,* 39 Cal.App.3d 512 at p. 515.) The jury swiftly recognized as much and focused on attempt, as evidenced by their request for additional guidance solely on that issue. The jury was fully and accurately instructed on attempt, which was relevant only to their determining if the factual predicate of an attempted escape was shown. Assuming that this predicate was found, the crucial inquiry for the jury would then be whether defendant had willfully assisted the attempted escape of her son. It was this latter issue which formed the ultimate and essential basis for liability. In light of our conclusion that there is no crime of attempting to assist an attempted escape for purposes of section 4534, it would have been inappropriate, incorrect, and ineffectual (for defendant's purpose of receiving a shorter term of imprisonment) had the jury been instructed that such a nonexistent crime was a lesser included offense of section 4534. Ancillary consequences of this conclusion are that defendant's counsel was not incompetent for failing to request such an instruction, and that an alternative verdict form would not have benefited defendant.

---

[9] There were certain references in the trial court's instructions and the prosecution's closing arguments which could be susceptible to the unfortunate construction that defendant was herself charged with escape. These were so obviously inapplicable that it may safely be assumed that the jury disregarded them. (See CALJIC. No. 17.31 ("All Instructions Not Necessarily Applicable"); cf. *People* v. *Cuadra* (1964) 225 Cal.App.2d 728, 733 [37 Cal.Rptr. 648].)

## Punishment

Section 4534 provides that any person who commits acts specified therein "is punishable as provided in Section 4533." The punishment provided by section 4533 is "imprisonment in the state prison, and fine not exceeding ten thousand dollars ($10,000)." The precise range of incarceration options is in turn specified by section 18, which provides that "every offense declared to be a felony, or to be punishable by imprisonment in a state prison, is punishable by imprisonment in any of the state prisons for 16 months, or two or three years." ▪ Defendant contends that in sentencing her to state prison for the aggravated term of three years the trial court erred. As she sees it, she should have been been sentenced to no more than half of this term in accordance with section 664.

This is yet another effort by defendant to marry section 4534 to section 664. As previously discussed, the flaw in defendant's argument is that section 4534 is a unitary statute prohibiting the willful provision of assistance to attempted and successful escapes alike. With its incorporation by reference of section 4533 and thus of section 18, section 4534 establishes the possible range of punishment for each of these violations. Section 18 is, for purposes of penalty, an integral part of section 4534. (See *In re Cook* (1910) 13 Cal.App. 399, 402-403 [110 P. 352].) Because defendant willfully provided assistance to her son's attempted escape, she is clearly within the incorporation of section 18 by section 4534. Her punishment was therefore to be determined without reference to section 664, which by its express terms governs only "where no provision is made by law for the punishment of such attempts." (Cf. *In re Haines, supra,* 195 Cal. 605 at pp. 610-611; *People* v. *Barnum* (1980) 113 Cal.App.3d 340, 348 [169 Cal.Rptr. 840]; *People* v. *Oppenheimer, supra,* 236 Cal.App.2d 863 at pp. 864-865, 867-868; *People* v. *Siegel, supra,* 198 Ca 1.App.2d 676 at pp. 683-684.) Defendant was sentenced in conformity with the express language of section 18, and the trial court must therefore be absolved of error.

The judgment of conviction is affirmed.

Anderson, P. J., and Channell, J., concurred.

A petition for a rehearing was denied July 15, 1988, and the opinion was modified to read as printed above.